## GERALDINE D. LYON *v.* VIRGINIA JONES ET AL.
### (SC 18096)

Norcott, Katz, Palmer, Zarella and Schaller, Js.

---

Argued November 21, 2008—officially released May 5, 2009

*Norman A. Pattis*, with whom, on the brief, was *Kimberly Coleman*, for the appellant (plaintiff).

*Gregory T. D'Auria*, associate attorney general, with whom were *Margaret Q. Chapple*, assistant attorney general, and, on the brief, *Richard Blumenthal*, attorney general, and *Joseph A. Jordano*, assistant attorney general, for the appellees (defendants).

*Opinion*

ZARELLA, J. Following our grant of certification,[1] the plaintiff, Geraldine D. Lyon, appealed from the judgment of the Appellate Court affirming the judgment of the trial court, claming that the Appellate Court incorrectly interpreted General Statutes §§ 46a-60 and 46a-70 as barring the plaintiff's employment discrimination action under the doctrine of sovereign immunity. The defendants, the office of the attorney general (attorney general's office) and certain of its employees, Virginia Jones and Edward Reynolds, although agreeing with the plaintiff that the Appellate Court misconstrued § 46a-60, urge this court to affirm that court's interpretation of § 46a-70, and further urge us to affirm the Appellate Court's decision on the alternate ground that the plaintiff's claims are barred by the doctrine of collateral estoppel. We agree with the defendants that the plaintiff's claims are barred by the doctrine of collateral estoppel and agree with the parties that the Appellate Court misconstrued § 46a-60. Accordingly, we affirm in part and reverse in part the judgment of the Appellate Court.

The Appellate Court's opinion recited the following uncontested facts and procedural history. "At the time this case began, the plaintiff was a paralegal specialist 1 at the attorney general's office and had worked in that capacity since 1987. On April 18, 2000, she filed a complaint with the commission on human rights and opportunities (commission) alleging harassment and a

---

[1] We granted the plaintiff's petition for certification to appeal limited to the following issues: (1) "Did the Appellate Court properly conclude that the plaintiff was required to obtain an authorization from either the claims commissioner or the General Assembly in order to pursue her claims under General Statutes § 46a-60 (a) (1) pursuant to General Statutes §§ 4-141 through 4-165?"; and (2) "Did the Appellate Court properly conclude that General Statutes § 46a-99 does not constitute a waiver of the state's immunity for suits in damages?" *Lyon* v. *Jones*, 285 Conn. 914, 914–15, 943 A.2d 472 (2008).

hostile work environment, and that she was denied a promotion to paralegal specialist 2 on the discriminatory bases of her age, sex and disability. The commission found that the plaintiff failed to introduce sufficient evidence to show discrimination and [thereafter] issued a release of jurisdiction.

"The plaintiff then filed [an action] in the United States District Court for the District of Connecticut, claiming that the defendants discriminated against her on the bases of age, sex and disability in violation of 42 U.S.C. § 12111 et seq. (Americans with Disabilities Act of 1990), 29 U.S.C. § 621 et seq. (Age Discrimination in Employment Act of 1967), 42 U.S.C. § 2000e-2 (Title VII), and 42 U.S.C. § 1983, as well as General Statutes §§ 46a-58 (a), 46a-60 (a) (1) and 46a-70 (a) of the Connecticut Fair Employment Practices Act [act], General Statutes § 46a-51 et seq. She sought compensatory and punitive damages, attorney's fees and costs, a temporary and permanent injunction and other fair and equitable relief. The District Court dismissed all of her state law based claims and the majority of her federal claims, leaving only her claims under Title VII and 42 U.S.C. § 1983, which alleged a hostile work environment and failure to promote.

"Upon the dismissal by the District Court of her claims based on state law, the plaintiff filed a complaint in the [Superior Court in the] judicial district of Hartford. The plaintiff's amended complaint consisted of four counts alleging age, sex and disability discrimination: one count against the attorney general's office under § 46a-60 (a) (1) and one count against each of the three defendants under § 46a-70 (a).

"While the state claims were pending, the District Court granted the defendants' motion for summary judgment on the remaining federal claims. In its decision, the District Court found that the Title VII failure

to promote claim was time barred, that there were no material issues of fact in support of the plaintiff's claim that she was treated differently from other similarly situated individuals, that her treatment was insufficiently severe to create a hostile environment either under Title VII or § 1983, and that there was no discriminatory intent. *Lyon* v. *Jones*, 260 F. Sup. 2d 507, 511–14 (D. Conn. 2003), aff'd, 91 Fed. Appx. 196 (2d Cir. 2004). Subsequently, the defendants filed a motion for summary judgment with the trial court, claiming, inter alia, that the doctrines of sovereign immunity and collateral estoppel bar the plaintiff from recovery in state court.

"On February 28, 2006, the court issued a lengthy memorandum of decision dismissing the § 46a-60 (a) (1) claim against the attorney general's office for lack of subject matter jurisdiction because the plaintiff failed to obtain the requisite authorization from the claims commissioner before bringing her § 46a-60 (a) (1) claim against the state. The court also found that although General Statutes § 46a-99 provides plaintiffs with a private right of action for injunctive relief for discrimination by the state in violation of § 46a-70 (a), a claim for compensatory and punitive damages and costs cannot be brought under § 46a-70 (a) without permission to sue from the claims commissioner or the General Assembly." *Lyon* v. *Jones*, 104 Conn. App. 547, 549–51, 935 A.2d 201 (2007). The trial court also concluded that the plaintiff's claims for injunctive relief under § 46a-70 were barred by the doctrine of collateral estoppel.

On appeal to the Appellate Court, the plaintiff asserted that the trial court improperly had dismissed her claims under the doctrine of sovereign immunity because the trial court incorrectly had concluded that "General Statutes §§ 4-141 through 4-165 require the plaintiff to obtain authorization from the claims commissioner or the General Assembly prior to bringing a claim against the state under § 46a-60 (a) (1)." Id., 551.

The plaintiff also claimed that the trial court improperly had concluded that § 46a-99 does not waive sovereign immunity in an action for damages. Id., 555.

The defendants urged the Appellate Court to affirm the judgment of the trial court with respect to both claims made by the plaintiff. Moreover, the defendants argued that the plaintiff's entire appeal was moot because the trial court's finding of collateral estoppel regarding the claims brought under § 46a-70 provided an independently sufficient, unchallenged alternate ground supporting the trial court's decision. Although the Appellate Court did note that the trial court had found that the plaintiff's § 46a-70 (a) claims were barred by the doctrine of collateral estoppel, and that "[t]he plaintiff failed to challenge the [trial] court's findings of collateral estoppel in her principal brief"; id., 548 n.1; the Appellate Court's decision did not discuss the significance of this fact or address the defendants' mootness argument. The Appellate Court ultimately upheld the decision of the trial court as to both of the plaintiff's claims and affirmed the judgment in favor of the defendants. This certified appeal ensued.

On appeal to this court, the plaintiff challenges the Appellate Court's determination that she was required to obtain authorization from either the claims commissioner or the General Assembly in order to pursue her claims under § 46a-60 (a) (1). The plaintiff also asserts that the Appellate Court improperly concluded that § 46a-99 does not constitute a waiver of the state's sovereign immunity for suits in damages. The defendants now agree with the plaintiff that the Appellate Court improperly interpreted § 46a-60, but they urge this court to affirm the Appellate Court's judgment with respect to § 46a-99. The defendants also offer two alternate grounds for affirmance. First, the defendants argue that the Appellate Court's judgment can be affirmed on the ground that the plaintiff's claims are barred by the doc-

trine of collateral estoppel. Second, the defendants assert that the Appellate Court's judgment can be affirmed because the plaintiff's discrimination claims are time barred under General Statutes § 46a-82 (e).[2] We agree with the parties' argument concerning § 46a-60 and conclude that the doctrine of sovereign immunity does not bar the plaintiff's claim under that statute. We do not reach the plaintiff's claims under § 46a-70,[3] however, because we conclude that those claims are moot. Furthermore, although we conclude that the plaintiff's claim under § 46a-60 is not barred by the doctrine of sovereign immunity, we agree with the defendants that the claims are precluded by the doctrine of collateral estoppel.

I

As a threshold matter, we note, sua sponte, that the Appellate Court lacked jurisdiction to review the plaintiff's claims under § 46a-70 (a)[4] because those claims

---

[2] We do not find it necessary to reach the defendants' second alternate ground for affirmance.

[3] General Statutes § 46a-99 provides a cause of action for alleged violations of various substantive antidiscrimination statutes, including § 46a-70. Section 46a-99 provides: "Any person claiming to be aggrieved by a violation of any provision of sections 46a-70 to 46a-78, inclusive, or sections 46a-81h to 46a-81o, inclusive, may petition the Superior Court for appropriate relief and said court shall have the power to grant such relief, by injunction or otherwise, as it deems just and suitable." Thus, although the second certified issue in this appeal refers only to § 46a-99, of necessity we must consider the viability of the underlying substantive claim in order to determine whether we can or should reach the sovereign immunity issue with respect to § 46a-99. If the plaintiff has no claim under § 46a-70, or the Appellate Court was without jurisdiction to consider such a claim, then the issue of sovereign immunity is never reached.

[4] General Statutes § 46a-70 (a) provides: "State officials and supervisory personnel shall recruit, appoint, assign, train, evaluate and promote state personnel on the basis of merit and qualifications, without regard for race, color, religious creed, sex, marital status, age, national origin, ancestry, mental retardation, mental disability, learning disability or physical disability, including but not limited to, blindness, unless it is shown by such state officials or supervisory personnel that such disability prevents performance of the work involved."

are moot. The plaintiff did not challenge the trial court's collateral estoppel finding on appeal to the Appellate Court, a finding that provides an independent basis for upholding the trial court's granting of summary judgment as to the plaintiff's § 46a-70 claims, thus rendering that part of the appeal moot.[5] Our determination that the plaintiff's appeal of her claims brought under § 46a-70 is moot disposes of three of the four counts of her amended complaint dated November 5, 2003.

Mootness raises the issue of a court's subject matter jurisdiction and is therefore appropriately considered even when not raised by one of the parties.[6] "Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [this] court's subject matter jurisdiction . . . ." (Internal quotation marks omitted.) *Putman* v. *Kennedy*, 279 Conn. 162, 168, 900 A.2d 1256 (2006); see also *State* v. *McElveen*, 261 Conn. 198, 204, 802 A.2d 74 (2002); *In re William D.*, 97 Conn. App. 600, 603, 905 A.2d 696 (2006), aff'd, 284 Conn. 305, 933 A.2d 1147 (2007). "A determination regarding . . . [the Appellate Court's] subject matter jurisdiction is a question of law . . . [and, therefore] our review is plenary." (Internal quotation marks omit-

---

[5] We note that, with respect to the plaintiff's claims under § 46a-70 (a), the trial court specifically found that "[s]ince the same issue, the plaintiff's ability to establish a prima facie case for discriminatory failure to promote, would be litigated here as was actually litigated in the plaintiff's federal case . . . the defendants' motion for summary judgment should be granted as to the requests for injunctive relief . . . ." The court's collateral estoppel finding was limited to the plaintiff's claims for injunctive relief because it already had determined that her claims seeking money damages under § 46a-70 (a) were barred by the doctrine of sovereign immunity. We can see no reason, however, why identical claims brought under the same statute on the same factual basis should be treated differently under the doctrine of collateral estoppel merely because they seek different remedies. Thus, the trial court's collateral estoppel finding affects all of the plaintiff's claims brought under § 46a-70 (a).

[6] Although the issue is not raised before this court, a review of the parties' briefs to the Appellate Court indicates that the defendants did indeed raise and brief the issue of mootness before that court.

ted.) *Pritchard* v. *Pritchard*, 281 Conn. 262, 270, 914 A.2d 1025 (2007).

The fundamental principles underpinning the mootness doctrine are well settled. "We begin with the four part test for justiciability established in *State* v. *Nardini*, 187 Conn. 109, 445 A.2d 304 (1982). . . . Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable. Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant. . . . Id., 111–12. . . .

"The mootness doctrine is rooted in the first factor of the *Nardini* test. *State* v. *McElveen*, supra, 261 Conn. 204–205. It is founded on the same policy interests as the doctrine of standing, namely, to assure the vigorous presentation of arguments concerning the matter at issue. . . . This court recently reiterated that the standing doctrine is designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . Id., 204. Indeed, we note that courts are called upon to determine existing controversies, and thus may not be used as a vehicle to obtain advisory judicial opinions on points of law. Id., 204–205.

"[A]n actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief

through its disposition of the merits, a case has become moot. . . . Id., 205." (Citation omitted; internal quotation marks omitted.) *Wallingford* v. *Dept. of Public Health*, 262 Conn. 758, 766–67, 817 A.2d 644 (2003). "[I]t is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from *the determination of which no practical relief can follow*." (Emphasis added; internal quotation marks omitted.) *Ayala* v. *Smith*, 236 Conn. 89, 93, 671 A.2d 345 (1996). "In determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff or defendant in any way." *Hechtman* v. *Savitsky*, 62 Conn. App. 654, 659, 772 A.2d 673 (2001).

The Appellate Court was faced with an analogous situation in *Housing Authority* v. *Davis*, 57 Conn. App. 731, 732, 750 A.2d 1148, cert. denied, 254 Conn. 901, 755 A.2d 218 (2000), in which the plaintiff housing authority brought a three count summary process action alleging, inter alia, serious nuisance and breach of lease, to recover possession of certain premises it had leased to the defendants. The trial court rendered judgment for the plaintiff on both counts. Id. The defendants challenged the finding of serious nuisance on appeal to the Appellate Court but failed to challenge the trial court's breach of lease determination. Id., 732 n.1. The Appellate Court held that the appeal was moot because, even if that court "were to reverse the trial court's judgment on the third count of the plaintiff's complaint, the judgment for the plaintiff on the first count would remain in effect. No practical relief, therefore, [could] follow from this appeal." Id., 733.

The problem presented by the appeal in the present case with respect to the trial court's collateral estoppel determination, although somewhat unique, is similar in principle to the situation in *Housing Authority* v. *Davis*, supra, 57 Conn. App. 731. As the Appellate Court noted in the present case, "[t]he plaintiff failed to challenge

the court's findings of collateral estoppel . . . ." *Lyon*
v. *Jones*, supra, 104 Conn. App. 548 n.1. Thus, even if
we were to agree with the plaintiff on the issue that
she *does* raise with respect to her § 46a-70 (a) claims,
we still would not be able to provide her any relief in
light of the binding adverse finding with respect to
those claims. By the same reasoning applied in *Housing
Authority* v. *Davis*, supra, 733, the plaintiff's appeal in
the present case with respect to her claims brought
under § 46a-70 (a) is moot. We conclude, therefore, that
the Appellate Court improperly considered the merits
of these claims and reverse in part the judgment of that
court with respect to the § 46a-70 claims and remand
the case to that court with direction to dismiss that
portion of the plaintiff's appeal for lack of subject mat-
ter jurisdiction.

The trial court dismissed the plaintiff's § 46a-60 claim,
on the other hand, solely on the basis that the claim
was barred by the doctrine of sovereign immunity. The
plaintiff appealed this determination to the Appellate
Court; see *Lyon* v. *Jones*, supra, 104 Conn. App. 551;
and, thereafter, to this court. Thus, the claim brought
under § 46a-60 is not moot. The sole remaining issue
on appeal, therefore, is whether the Appellate Court
properly affirmed the trial court's dismissal of count
one of the plaintiff's amended complaint on the basis
that it was barred by the doctrine of sovereign
immunity.

II

We begin by noting that the remaining issue of
whether General Statutes § 46a-100 waives sovereign
immunity for actions brought under § 46a-60 concerns
a question of statutory construction over which we
exercise plenary review. See, e.g., *Dept. of Transporta-
tion* v. *White Oak Corp.*, 287 Conn. 1, 7, 946 A.2d 1219
(2008). "The principles that govern statutory construc-

tion are well established. When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Friezo* v. *Friezo*, 281 Conn. 166, 181–82, 914 A.2d 533 (2007).

We next proceed to review briefly the doctrine of sovereign immunity and its associated burdens. "It is a well-established rule of the common law that a state cannot be sued without its consent. . . . A sovereign is exempt from suit, not because of any formal conception or obsolete theory, but on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends. . . . The practical and logical basis of the doctrine is today recognized to rest on this principle and on the hazard that the subjection of the state and federal governments to private litigation might constitute a serious interference with the performance of their functions and with their control over their respective

instrumentalities, funds, and property." (Citations omitted; internal quotation marks omitted.) *Martinez* v. *Dept. of Public Safety*, 263 Conn. 74, 78–79, 818 A.2d 758 (2003).

"We have held that a plaintiff seeking to circumvent the doctrine of sovereign immunity must show that: (1) the legislature, either expressly or by force of a necessary implication, statutorily waived the state's sovereign immunity . . . or (2) in an action for declaratory or injunctive relief, the state officer or officers against whom such relief is sought acted in excess of statutory authority, or pursuant to an unconstitutional statute." (Citation omitted.) *Miller* v. *Egan*, 265 Conn. 301, 314, 828 A.2d 549 (2003).

Although the Appellate Court recited this exact standard; *Lyon* v. *Jones*, supra, 104 Conn. App. 552; it agreed with the trial court's determination that the plaintiff was required to obtain an authorization from the claims commissioner or the General Assembly in order to pursue her claims under § 46a-60 against the attorney general's office, pursuant to §§ 4-141 through 4-165.[7] Id., 554. We disagree. In our view, § 46a-100 represents an unambiguous waiver of sovereign immunity, authorizing actions against the state for alleged discriminatory employment practices in violation of § 46a-60. This conclusion is bolstered by our review of the operation of the carefully crafted statutory scheme.

Our review of the act reveals that the legislature has devised a comprehensive, ordered scheme through which claims of employment discrimination may be prosecuted. The relevant substantive prohibitions

[7] We note that the plaintiff's amended complaint dated November 5, 2003, includes only one count alleging a violation of § 46a-60 (a) (1). The remaining counts, brought against both the attorney general's office and the individual defendants, allege violations of § 46a-70 (a), and have been disposed of previously in this opinion.

against the discriminatory employment practices alleged by the plaintiff are set forth in § 46a-60 (a), which provides in relevant part: "It shall be a discriminatory practice in violation of this section: (1) For an employer, by the employer or the employer's agent . . . to discriminate against [an] individual in compensation or in terms, conditions or privileges of employment because of the individual's . . . age, sex . . . or physical disability . . . ." The legislature has provided an initial administrative process for individuals "claiming to be aggrieved by an alleged discriminatory practice"; General Statutes § 46a-82 (a); such as the practices proscribed under § 46a-60. Pursuant to § 46a-82 (a), such a person "may, by himself . . . or by [his] attorney, make, sign and file with the commission a complaint in writing under oath, which shall state the name and address of the person alleged to have committed the discriminatory practice, and which shall set forth the particulars thereof and contain such other information as may be required by the commission. . . ."[8]

Upon receiving such a complaint, General Statutes § 46a-83 outlines the procedure that the commission must follow. After serving the complaint on the respondent employer and receiving its response, § 46a-83 (b) provides in relevant part that "the executive director [of the commission] or the executive director's designee shall review the file. . . . If the executive director or the executive director's designee determines that the complaint fails to state a claim for relief or is frivolous on its face, that the respondent is exempt from the provisions of this chapter or that there is no reasonable

---

[8] Filing a complaint with the commission under § 46a-82 is a prerequisite to the accrual of a private cause of action. General Statutes § 46a-101 (a) provides: "No action may be brought in accordance with section 46a-100 unless the complainant has received a release from the commission in accordance with the provisions of this section." Clearly, a complaint must be properly filed before a release can be obtained. See General Statutes §§ 46a-94a (b), 46a-100 and 46a-101 (b).

possibility that investigating the complaint will result in a finding of reasonable cause, the complaint shall be dismissed. . . ." In the event that the commission finds potential merit in the complaint after conducting its initial review, § 46a-83 (c) provides the following instruction: "The commission may conduct mandatory mediation sessions, expedited or extended fact-finding conferences or complete investigations or any combination thereof during the investigatory process for the purpose of finding facts, promoting the voluntary resolution of complaints or determining if there is reasonable cause for believing that a discriminatory practice has been or is being committed as alleged in the complaint."

The act provides several avenues that the complainant may pursue if she is dissatisfied with the foregoing administrative process. First, if the complaint is still pending, General Statutes § 46a-101 (b) provides two methods for obtaining a release of jurisdiction from the commission: "The complainant and the respondent, by themselves or their attorneys, may jointly request that the complainant receive a release from the commission at any time from the date of filing the complaint until the expiration of two hundred ten days from the date of filing of the complaint. The complainant, or his attorney, may request a release from the commission if his complaint with the commission is still pending after the expiration of two hundred ten days from the date of its filing." It appears that, in giving both the parties and the commission the option of shifting the controversy directly to the court, the legislature was seeking a more expeditious method of resolving employment discrimination complaints that may have been delayed at the commission level.

Additionally, General Statutes § 46a-83a (a) provides another option for complainants who want to bring their discrimination claims to a court. Unlike § 46a-

101, however, this provision only operates once the commission has dismissed a complaint. "If a complaint is dismissed pursuant to subsection (b) of section 46a-83, or is dismissed for failure to accept full relief pursuant to subsection (c) of said section, and the complainant does not request reconsideration of such dismissal as provided in subsection (e) of said section, the executive director of the commission shall issue a release and the complainant may, within ninety days of receipt of the release from the commission, bring an action in accordance with sections 46a-100 and 46a-102 to 46a-104, inclusive." General Statutes § 46a-83a (a).

The statute at issue in the present case, § 46a-100, is the primary vehicle allowing a complainant who has received a release from the commission to further prosecute her claim in court. Section 46a-100 provides: "Any person who has timely filed a complaint with the [commission] in accordance with section 46a-82 and who has obtained a release from the commission in accordance with section 46a-83a or 46a-101, *may also bring an action in the superior court* for the judicial district in which the discriminatory practice is alleged to have occurred or in which the respondent transacts business, except any action involving a state agency or official may be brought in the superior court for the judicial district of Hartford." (Emphasis added.) We conclude from this language, and from the statute's place in the overarching statutory scheme, that § 46a-100 expressly waives sovereign immunity and creates a cause of action in the Superior Court for claims alleging a violation of § 46a-60 over which the commission has released jurisdiction.

The Appellate Court concluded "that the more reasoned interpretation of this clause [of § 46a-100] regards venue and provides for the Hartford judicial district to be the proper venue for a claim against a state actor." *Lyon* v. *Jones*, supra, 104 Conn. App. 554. In order

to avoid the obvious logical implication that a venue provision presupposes the right to a substantive cause of action, the Appellate Court injected into the statute a requirement that, after having obtained a release from the commission, state employees must seek authorization from the claims commissioner or General Assembly prior to filing an action. Id., 551. For the reasons that follow, we conclude that this interpretation is untenable.

We begin by addressing the role of the claims commissioner when a party seeks to bring an action against the state. The legislature created the office of the claims commissioner to serve as "the gatekeeper through which [actions] against the state must pass." Id., 553. The Appellate Court correctly noted that "[c]hapter 53 of the General Statutes, §§ 4-141 through 4-165, titled 'Claims Against the State,' describes the responsibilities and powers of the claims commissioner." Id. We previously have indicated our understanding of the significance of this statutory scheme: "[Chapter 53] expressly bars [actions] upon claims cognizable by the claims commissioner except as he may authorize, an indication of the legislative determination to preserve sovereign immunity as a defense to monetary claims against the state not sanctioned by the [claims] commissioner or other statutory provisions." (Internal quotation marks omitted.) *Krozser* v. *New Haven,* 212 Conn. 415, 421, 562 A.2d 1080 (1989), cert. denied, 493 U.S. 1036, 110 S. Ct. 757, 107 L. Ed. 2d 774 (1990).

General Statutes § 4-142, however, sets forth various exceptions to the claims commissioner's jurisdiction, and provides in relevant part: "There shall be a Claims Commissioner who shall hear and determine all claims against the state except . . . (2) claims upon which suit *otherwise is authorized by law* including suits to recover similar relief arising from the same set of facts; (3) claims for which an administrative hearing proce-

dure otherwise is established by law . . . ." (Emphasis added.) Before the Appellate Court, the plaintiff argued that, upon receiving a release of jurisdiction from the commission, § 46a-100 waives the state's immunity. With little explanatory analysis, and no mention of the exceptions enumerated in § 4-142, the Appellate Court construed § 46a-100 as merely indicating the appropriate venue for such an action, should it be authorized by the claims commissioner. Specifically, the Appellate Court stated: "In light of the requirement that our state's sovereign immunity not be diminished without clear intent, we find that the more reasoned interpretation of this clause regards venue and provides for the Hartford judicial district to be the proper venue for a claim against a state actor. Thus, we believe that the provisions of § 46a-100 do not constitute a waiver of the state's immunity." *Lyon* v. *Jones*, supra, 104 Conn. App. 554.

This interpretation is unsupportable, as it ignores § 4-142 (3), which specifically exempts from the jurisdiction of the claims commissioner "claims for which an administrative hearing procedure otherwise is established by law . . . ." Section 46a-82 (a) provides just such an alternative administrative procedure: "Any person claiming to be aggrieved by an alleged discriminatory practice . . . may, by himself . . . or by [his] attorney, make, sign and file with the commission a complaint in writing under oath . . . ." Thus, it is apparent that claims over which the commission has statutory jurisdiction are, by the express terms of § 4-142 (3), excluded from the purview of the claims commissioner.

Moreover, § 4-142 (2), read together with § 46a-101, also operates to exempt a claim brought under § 46a-60 from the claims commissioner's jurisdiction. Section 46a-101 (a) provides: "No action may be brought in accordance with section 46a-100 unless the complainant has received a release from the commission in

accordance with the provisions of this section."[9] Viewed as a limitation on the availability of a private cause of action, § 46a-101 implies that § 46a-100 *creates* that cause of action, rather than merely providing rules for determining the proper venue. A complaint brought before the commission alleging a violation of § 46a-60 is simply not "cognizable" by the claims commissioner. *Krozser* v. *New Haven*, supra, 212 Conn. 421. Section 46a-100 explicitly authorizes a plaintiff to file a discrimination action, over which the commission has released its jurisdiction, against the state in Superior Court without the approval of the claims commissioner. Indeed, a contrary construction would undermine the provisions of the act, leading to absurd and unworkable results, which the legislature clearly did not intend.[10]

[9] Section 46a-83a (b) provides another route for an employee to request a release of jurisdiction from the commission, and provides in relevant part: "The executive director of the commission may, upon the complainant's request, issue a release from the commission if (1) a complaint is dismissed pursuant to subsection (b) of section 46a-83, and (2) the complainant requests reconsideration of the dismissal and the reconsideration request has been granted or denied, or the reconsideration request has not yet been acted upon in accordance with subsection (e) of section 46a-83. Whenever a reconsideration request has been granted or denied, a request for a release from the commission shall be made within fifteen days of receipt of the notice granting or denying such reconsideration request. The complainant may, within ninety days of receipt of the release from the commission, bring an action in accordance with section 46a-100 . . . ."

[10] This conclusion finds support in the various filing deadlines and limitation periods replete throughout these statutes. If the Appellate Court's determination is correct, these time constraints would create chaos and lead to absurd, confusing and inequitable results. For instance, § 46a-82 (e) allows an employee 180 days to file a complaint with the commission, and § 46a-101 provides the commission with 210 days to process the complaint. Assuming both of these periods are run to their maximum, 390 days, or approximately 13 months, could pass between the accrual of the claim and the commission's release of its jurisdiction. Under these circumstances, a complainant would be prohibited from subsequently seeking authorization to bring an action from the claims commissioner, as General Statutes § 4-148 provides a one year limitations period for claims to be brought before the claims commissioner.

Moreover, even if we assume that the plaintiff was able to file her claim with the claims commissioner, she likely would run afoul of the requirement

The parties to this appeal, including the attorney general's office as an appellee, agree with this conclusion. Indeed, this is the long-standing position of the office of the claims commissioner itself. See *Bonner* v. *State,* Office of the Claims Commissioner, Claim No. 12020 (April 23, 1996) ("The claimant has an administrative procedure available to address her claims and can appeal an unfavorable decision from [the commission] to the courts. The claim is therefore excluded under [General Statutes] § 4-142 [2] and [3] and the [c]laims [c]ommissioner lacks subject matter jurisdiction."); *DiMaggio* v. *State,* Office of the Claims Commissioner, File No. 16090 (October 25, 1996) ("[The] [c]laimant's allegations here are the same as those for which she seeks relief from [the commission] and are claims for which a civil [action] is authorized by law and an administrative procedure is otherwise established by law. [General Statutes § 4-142] [2] and [3]. The [c]ommissioner lacks subject matter jurisdiction and the claim is dismissed."); see also *In re Andoh,* Office of the Claims Commissioner, Claim No. 20929 (July 3, 2007) (same);

that any action under § 46a-100 be brought to court within ninety days of receipt of the release from the commission. See General Statutes § 46a-101 (e). This is because General Statutes § 4-149 (a) provides in relevant part that the "Attorney General shall review each claim delivered under section 4-147," and § 4-149 (b) provides in relevant part that the attorney general must "notify the Claims Commissioner and the agency or department involved within ninety days of receipt of a claim by the Attorney General in those instances when the Attorney General determines that protection of the state's interest does not reasonably require representation by the Attorney General before the Claims Commissioner." Once the attorney general makes this determination, the claims commissioner must schedule and conduct a hearing pursuant to General Statutes § 4-151. It is quite likely, therefore, that the construction of § 46a-100 favored by the Appellate Court would lead to the perverse result that state employees would be effectively prohibited from pursuing their claims in court because of these incompatible time limitations. In light of the plain language of the statutes, we cannot presume that the legislature intended this bizarre and potentially inequitable result. See, e.g., *Modern Cigarette, Inc.* v. *Orange,* 256 Conn. 105, 120, 774 A.2d 969 (2001) (in construing statutes, courts must use common sense and presume that legislature intended reasonable and rational result).

*Caldwell-Gaines* v. *State*, Office of the Claims Commissioner, File No. 18345 (March 2, 2001) (same). The commission also filed an amicus curiae brief in this case urging the same result.[11]

On the basis of the foregoing, we conclude that claims properly brought before the commission are outside the cognizance of the claims commissioner. Our analysis, however, cannot end here. Although we have concluded that the plaintiff's § 46a-60 claim is not procedurally barred, and was thus improperly resolved on that basis, we still must analyze the plaintiff's substantive claim to determine if, as is suggested by the defendants, that claim is nonetheless precluded under the doctrine of collateral estoppel. We conclude that, because the facts and legal analysis underlying the plaintiff's claims under both §§ 46a-70 and 46a-60 are identical, the doctrine of collateral estoppel also bars relitigation of the § 46a-60 (a) (1) claim.

Both parties agree that the proper legal standard to be applied to the plaintiff's discrimination claims is the same, regardless of the statutory label placed on those claims. Furthermore, the plaintiff does not contest the defendants' assertion that "[t]he trial court's holding that issue preclusion principles barred [the] plaintiff from relitigating her § 46a-70 (a) claim applies equally to [the] plaintiff's § 46a-60 (a) (1) claims." To the contrary, the plaintiff's sole response to the defendants' collateral estoppel argument is her insistence that "new evidence" came to light after the District Court granted summary judgment for the defendants, and that because "prior courts had no opportunity to include the 'new' evidence in their decisions," collateral estoppel should not bar her from litigating her discrimination claims in

---

[11] Thus, the principle that "an agency's interpretation of its own regulations is entitled to deference"; *MacDermid, Inc.* v. *Dept. of Environmental Protection*, 257 Conn. 128, 138, 778 A.2d 7 (2001); supports our conclusion.

state court. For the reasons set forth in the following discussion, we agree with the defendants.

Before proceeding to discuss the application of the doctrine of collateral estoppel to this case, we briefly set forth the well established fundamental principles underlying the doctrine. "The common-law doctrine of collateral estoppel, or issue preclusion, embodies a judicial policy in favor of judicial economy, the stability of former judgments and finality. . . . Collateral estoppel, or issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties upon a different claim. . . . For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment. . . .

"An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . 1 Restatement (Second), Judgments § 27, comment (d) (1982). An issue is *necessarily determined* if, in the absence of a determination of the issue, the judgment could not have been validly rendered. F. James & G. Hazard, Civil Procedure (3d Ed. 1985) § 11.19. If an issue has been determined, but the judgment is not dependent [on] the determination of the issue, the parties may relitigate the issue in a subsequent action. Findings on nonessential issues usually have the characteristics of dicta. 1 Restatement (Second), [supra, comment (h)]." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Lafayette* v. *General Dynamics Corp.*, 255 Conn. 762, 772–73, 770 A.2d 1 (2001).

The framework this court employs in assessing disparate treatment discrimination claims under Connecticut

law was adapted from the United States Supreme Court's decision in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and its progeny.[12] This court had occasion to explain the operation of this framework in *Craine* v. *Trinity College*, 259 Conn. 625, 638, 791 A.2d 518 (2002): "[T]here are four elements to a prima facie case where the aggrieved party is alleging illegal denial of tenure:[13] (1) that she belongs to a protected class; (2) that she was qualified for tenure; (3) that, despite her qualifications, she was denied tenure; and (4) that the denial took place under circumstances permitting an inference of discrimination." "Under this analysis, the employee must first make a prima facie case of discrimination. The employer may then rebut the prima facie case by stating a legitimate, nondiscriminatory justification for the employment decision in question. The employee then must demonstrate that the reason proffered by the employer is merely a pretext and that the decision actually was motivated by illegal discriminatory bias." Id., 637. "The most typical method used by plaintiffs to establish the fourth prong of a prima facie case is to introduce evidence that the defendant . . . promoted comparably qualified individuals not in a protected class of individuals." Id., 639. Importantly, it is also well established that "[w]e look to federal law for guidance on interpreting state employment discrimination law, and the analysis is the same under both." Id., 637 n.6.

---

[12] In *McDonnell Douglas Corp.* v. *Green*, supra, 411 U.S. 802, the court set forth the following test: "The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of [the] complainant's qualifications."

[13] Although the plaintiff in *Craine* v. *Trinity College*, supra, 259 Conn. 627, complained of being denied tenure, the analysis with respect to an allegedly unlawful denial of a promotion is the same.

In the present case, the District Court granted the defendants' motion for summary judgment on all counts. With respect to the plaintiff's Title VII claim, which was predicated on an allegation that the defendants harassed her and created a hostile work environment in violation of federal law, the District Court specifically determined that "[the plaintiff] has not created a material issue of fact that any of the [enumerated] actions, even if harassing, were motivated by a discriminatory intent. There is no evidence in the record to support [the plaintiff's] claim that she was discriminated against on the basis of sex. [The plaintiff] has not presented any proof demonstrating either that male employees were treated more favorably than she [was] or that [the individual defendants] or any other individual responsible for the harassment expressed or otherwise demonstrated discriminatory animus." *Lyon* v. *Jones,* supra, 260 F. Sup. 2d 512–13. The District Court came to a similar conclusion with respect to the plaintiff's claims under 42 U.S.C. § 1983 for the alleged failure to promote: "[The plaintiff] has not created a material issue of fact that she was treated differently than others similarly situated. [She] has not demonstrated that other similarly situated persons received promotions while she did not. Simply listing other individuals, in the absence of any evidence regarding their work performance or duties, who were promoted from [p]aralegal [s]pecialist [1] to [p]aralegal [s]pecialist [2], is insufficient." Id., 513. Thus, the District Court concluded that the plaintiff had failed to present a prima facie case of discrimination or harassment under the test set forth in *McDonnell Douglas Corp.*[14] Because the

---

[14] We note that although the District Court did not explicitly reference the *McDonnell Douglas Corp.* test in its memorandum of decision on the defendants' motion for summary judgment, its analysis of the claims presented and the language used in the decision clearly indicate that the court was indeed considering the claims under the test and standards set forth in *McDonnell Douglas Corp.* v. *Green,* supra, 411 U.S. 802.

issues resolved in the federal claims are the same as those that must be resolved in the state law claims, the plaintiff is collaterally estopped from relitigating those issues.

The only argument the plaintiff proffers in an attempt to avoid preclusion is that she has uncovered new evidence that the District Court did not consider in rendering its decision on the defendants' motion for summary judgment. As the plaintiff admitted at oral argument before this court, however, the District Court did indeed consider this purported new evidence. On May 14, 2003, Judge Hall of the United States District Court for the District of Connecticut issued a ruling on the plaintiff's motion for reconsideration. The plaintiff was seeking reconsideration of the court's ruling granting the defendants' motion for summary judgment on the basis of newly discovered evidence. This evidence included a seniority list indicating that one of the plaintiff's male colleagues was promoted, while she was not. She also submitted "further documentation in support of her hostile work environment claims."

Judge Hall first determined that the new evidence offered by the plaintiff "was available to her prior to the close of discovery" and, therefore, could not be considered new. The court continued, however, noting that, "[e]ven if the court did treat the evidence as 'newly discovered' . . . it would not reasonably affect the conclusions reached by the court. . . . [The plaintiff's] evidence does not create a material issue of fact that . . . any . . . male employee . . . was a similarly situated employee who was more favorably treated." (Internal quotation marks omitted.) The court also considered the plaintiff's evidence with respect to the hostile work environment claim and concluded that the evidence was insufficient to create a material issue of fact or to affect the court's judgment in any way. The plaintiff's concession at oral argument before this court,

coupled with the District Court's explicit consideration, and rejection, of this new evidence, combine to eliminate the plaintiff's only response to the defendants' collateral estoppel argument.

The plaintiff had a full and fair opportunity to litigate the elements underlying her § 46a-60 claim in the District Court, and she failed to make a prima facie showing of discrimination. Nothing in the record before us, or in the briefs and arguments of counsel, provides any justification for departing from the doctrine of collateral estoppel to allow the plaintiff an opportunity to relitigate this claim in the Superior Court. Thus, for the reasons set forth in this opinion, we conclude that the plaintiff's § 46a-60 claims are barred by the doctrine of collateral estoppel.

The judgment of the Appellate Court is reversed in part and the case is remanded to that court with direction to dismiss that part of the appeal concerning the plaintiff's claims under § 46a-70; the judgment of the Appellate Court is affirmed in all other respects.

In this opinion the other justices concurred.