******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* JOSHUA COUNCIL
## (SC 20513)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Kahn, Ecker and Keller, Js.

*Syllabus*

Convicted of the crimes of murder and criminal possession of a firearm in connection with the shooting death of the victim near a gas station in New Haven, the defendant appealed to this court. At trial, the state presented a witness who qualified as an expert in historical cell site analysis and testified that the defendant's cell phone utilized cell towers near the gas station around the time of the shooting. In order to corroborate the defendant's theory that he was not present at the gas station at the time of the shooting, defense counsel proffered testimony from O, an investigator for a private investigation company who had received training in cell phone analytics, as to the defendant's location at relevant times on the basis of certain cell phone carrier data. The trial court sustained the prosecutor's objections to O's proffered testimony and precluded O from testifying on the grounds that the evidence was immaterial and irrelevant, O did not possess sufficient qualifications to provide expert testimony on the cell phone carrier data, and O did not establish the reliability of the methodology on which he relied. On appeal, the defendant contended that the trial court had violated his constitutional right to present a defense by precluding O's testimony. Although the defendant acknowledged that his right to present a defense was limited by the rules of evidence, he nevertheless claimed that the trial court had improperly excluded O's testimony because O was qualified as an expert pursuant to the applicable provision (§ 7-2) of the Connecticut Code of Evidence, which permits testimony by a qualified expert when his or her testimony will assist the fact finder in understanding the evidence or in determining a disputed fact. *Held* that the defendant's appeal was dismissed as moot; even if this court agreed with the defendant that the trial court improperly had determined that O lacked sufficient qualifications under § 7-2 of the Connecticut Code of Evidence to provide expert testimony on the cell phone carrier data, this court could not afford the defendant any practical relief, as there were two independent grounds for the trial court's exclusion of O's testimony that the defendant did not challenge on appeal, namely, that the proffered evidence was immaterial and irrelevant and that O did not establish the reliability of the methodology on which he relied.

Argued March 22—officially released July 26, 2022

*Procedural History*

Substitute information charging the defendant with the crimes of murder and criminal possession of a firearm, brought to the Superior Court in the judicial district of New Haven and tried to the jury before *Vitale, J.*; verdict and judgment of guilty, from which the defendant appealed to this court. *Appeal dismissed.*

*Richard S. Cramer*, for the appellant (defendant).

*Kathryn W. Bare*, senior assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, chief state's attorney, and *Stacey Miranda*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

McDONALD, J. In this appeal, we are asked to determine whether the trial court properly precluded the proffered testimony of the defendant's expert on cell phone location data. The defendant, Joshua Council, appeals from the judgment of conviction, rendered after a jury trial, of murder and criminal possession of a firearm by a convicted felon. At trial, defense counsel proffered testimony from an expert witness as to the defendant's location during certain relevant times on the basis of cell phone carrier data. The trial court precluded the witness from testifying on the grounds that (1) the evidence was immaterial and irrelevant, (2) the witness did not articulate sufficient qualifications to provide expert opinion on the data, and (3) the testimony did not establish the reliability of the data. On appeal, the defendant contends that the trial court improperly excluded the testimony because the witness was qualified as an expert pursuant to § 7-2 of the Connecticut Code of Evidence.[1] We dismiss the defendant's appeal as moot because he has not challenged all of the trial court's bases for its evidentiary ruling, and, therefore, this court cannot provide him practical relief.

The jury reasonably could have found the following facts. In January, 2018, the defendant encountered the victim, Kenneth Cooper, in the parking lot of a gas station in New Haven. After a brief interaction, the victim attempted to reenter his vehicle when the defendant fired eight shots from a .45 caliber firearm at him. The victim later died from multiple gunshot wounds to the torso and extremities. The defendant was subsequently arrested and charged with murder and criminal possession of a firearm by a convicted felon.

At trial, the state presented an expert witness, James J. Wines, to testify as to the defendant's location and movements at times relevant to the shooting. Wines is a special agent with the Federal Bureau of Investigation and an expert in historical cell site analysis. Using cell phone tower data, Wines plotted the defendant's cell phone use and determined that the defendant's phone used cell towers near the gas station around the time of the shooting.

The defendant's theory of the case was predicated on his testimony that he was not present at the gas station at the time of the shooting. To corroborate the defendant's theory, and to counter the testimony from the state's witnesses, defense counsel proffered his own evidence concerning data from cell site locations. Specifically, defense counsel presented two witnesses: Linda Thomas, a trial analyst and custodian of records for AT&T, and James Oulundsen, an investigator for a private investigation company.

During the proffer, which was held outside the presence of the jury, Thomas testified that the defendant's

cell phone records contained AT&T network location system or network location service (NELOS) data. Thomas testified that NELOS data comprise "historical precision location information" collected by AT&T engineers to "help maintain the network . . . ." The examination of Thomas revealed that NELOS data are "best estimate[s] of where the device was based on the unverifiable sources" that the data were retrieved from. Thomas cited possible use of the data in customer billing or customer complaints of dropped calls. Thomas was unable to articulate the sources of the NELOS points or to verify the accuracy of the points. The NELOS data records from AT&T that were the subject of Thomas' testimony contained a printed disclaimer warning that the user should "exercise caution in using [the] records for investigative purposes as location data [are] sourced from various databases [that] may cause location results to be less than exact."

Thereafter, Oulundsen testified, during the proffer, that he was a digital forensic investigator for a private investigation company and had received training in cell phone analytics. He offered testimony and an accompanying report that detailed his mapping of the NELOS points and their respective latitude and longitude over Google Maps to estimate the defendant's location at times relevant to the shooting.[2] Oulundsen was unable to verify the accuracy of the NELOS data or the methodology used to arrive at those NELOS points. Throughout Oulundsen's testimony, the prosecutor objected on the grounds of lack of foundation, lack of expert qualifications concerning the NELOS data and the accompanying exhibits,[3] and lack of reliability of the methodology.

Following arguments from the prosecutor and defense counsel regarding the admissibility of the testimony and accompanying exhibits, the court sustained the prosecutor's objections. As a result, the testimony and exhibits were excluded and were not presented to the jury. Initially, the court based its ruling on the relevance and materiality of the evidence under § 4-1 of the Connecticut Code of Evidence, concluding: "The court is not persuaded that using the methods . . . [and] the information [the witness] testified to has been adequately explained to be material and relevant for the purpose for which it's being offered." The court reasoned that the evidence was speculative and that it would not "have a logical tendency to aid the jury in determining where the cell phone was located." The next day, before returning to the presentation of evidence, the court amplified its ruling, adding that, in addition to the relevance and materiality concerns, "none of the factors in *State* v. *Edwards*, [325 Conn. 97, 156 A.3d 506 (2017)], or *State* v. *Steele*, 176 Conn. App. 1, [169 A.3d 797, cert. denied, 327 Conn. 962, 172 A.3d 1261 (2017)],[4] [was] presented or articulated with a sufficient evidentiary basis on the record given the testimony from . . . Thomas and . . . Oulundsen,

separately and in combination . . . ." (Footnote added.) The court also "was not persuaded . . . that . . . Oulundsen possessed any articulated background or specific training . . . using the so-called NELOS data that qualified him to render opinions on that topic."

At the conclusion of trial, the jury found the defendant guilty on both counts, and the trial court sentenced the defendant to a total effective sentence of seventy years of incarceration. This appeal followed.

On appeal, the defendant contends that the trial court violated his sixth amendment right to present a defense[5] by precluding Oulundsen's testimony and related exhibits regarding the NELOS data.[6] Although the defendant acknowledges that his right to present a defense is limited by the rules of evidence; see, e.g., *State* v. *Cerreta*, 260 Conn. 251, 260–61, 796 A.2d 1176 (2002); he argues that the admissibility of Oulundsen's testimony is governed by § 7-2 of the Connecticut Code of Evidence, which permits testimony by qualified experts when the testimony will assist the fact finder in understanding the evidence or in determining a disputed fact. The defendant asserts that Oulundsen's testimony was admissible pursuant to § 7-2 because Oulundsen was a qualified expert with specialized knowledge and training in cell phone analysis and his testimony, if allowed, would have assisted the trier of fact in understanding the evidence. The defendant further asserts that the nature of the NELOS data, including flaws in accuracy or specificity, goes to weight and not to admissibility.

The state argues that the defendant's claim on appeal is not reviewable because the defendant failed to challenge all of the independent bases for the trial court's evidentiary ruling. Specifically, the state contends that the defendant failed to challenge the trial court's conclusions that the evidence was immaterial, irrelevant and not reliable. The state also argues that the defendant's unpreserved claim is not reviewable under *State* v. *Golding*, 213 Conn. 233, 39–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015), "because a trial court's ruling on the proper evidentiary foundation for admitting evidence is not an issue of constitutional dimension." Alternatively, the state maintains that, even if the defendant's claim is reviewable, the trial court acted well within its discretion in excluding the proffered expert testimony from Oulundsen because, during the proffer, defense counsel failed to establish Oulundsen's expertise, the reliability of the testimony or data points, and the relevance of the evidence under § 4-1 of the Connecticut Code of Evidence. We agree with the state that the defendant failed to challenge all of the independent bases of the trial court's evidentiary ruling, and, therefore, the defendant's claim on appeal is moot.

The issue of mootness presents a threshold question of justiciability that we must determine prior to a review

on the merits because it implicates this court's subject matter jurisdiction. See, e.g., *Lyon* v. *Jones*, 291 Conn. 384, 392, 968 A.2d 416 (2009). The principles underpinning the mootness doctrine and justiciability are well settled. "We begin with the four part test for justiciability established in *State* v. *Nardini*, 187 Conn. 109, 445 A.2d 304 (1982). . . . Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable. Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant." (Internal quotation marks omitted.) *Lyon* v. *Jones*, supra, 393; see also *State* v. *Nardini*, supra, 111–12. "In determining mootness, the dispositive question is whether a successful appeal would benefit the [complainant] . . . in any way." (Internal quotation marks omitted.) *Lyon* v. *Jones*, supra, 394.

"[When] an appellant fails to challenge all bases for a trial court's adverse ruling on his claim, even if this court were to agree with the appellant on the issues that he does raise, [this court] still would not be able to provide [him] any relief in light of the binding adverse finding[s] [not raised] with respect to those claims. . . . Therefore, when an appellant challenges a trial court's adverse ruling, but does not challenge all independent bases for that ruling, the appeal is moot." (Citation omitted; internal quotation marks omitted.) *State* v. *Lester*, 324 Conn. 519, 526–27, 153 A.3d 647 (2017).

Here, the trial court's ruling to exclude Oulundsen's testimony rested on three separate grounds. First, the court concluded that the testimony was speculative and would not have a logical tendency to aid the jury in determining the location of the defendant's cell phone, therefore making it immaterial and irrelevant. See Conn. Code Evid. § 4-1. Second, the court determined that the defendant failed to establish that Oulundsen possessed the qualifications necessary to provide expert testimony about NELOS data. See Conn. Code Evid. § 7-2. Lastly, the court also held that the testimony failed to satisfy any of the factors set forth in *Steele* or *Edwards* to establish the reliability of the methodology for the proffered testimony. See footnote 4 of this opinion.

The defendant challenges only one of the trial court's bases for excluding Oulundsen's testimony, namely, the qualifications of Oulundsen as an expert under § 7-2 of the Connecticut Code of Evidence. The defendant's initial brief fails to challenge the court's exclusion of the evidence on the ground of reliability under *Steele* and *Edwards* or on the grounds of relevancy and materiality. Although the defendant makes cursory reference

to reliability in his reply brief, it is well settled that we will not consider claims of error that are raised for the first time in an appellant's reply brief. See, e.g., *Barlow* v. *Commissioner of Correction*, 343 Conn. 347, 362 n.2, 273 A.3d 680 (2022) ("It is axiomatic that a party may not raise an issue for the first time on appeal in [his] reply brief. . . . Although the function of the appellant's reply brief is to respond to the arguments and authority presented in the appellee's brief, that function does not include raising an entirely new claim of error." (Internal quotation marks omitted.)).

The reliability, materiality, and relevancy grounds of the trial court's ruling to exclude Oulundsen's testimony are independent bases for the exclusion, and these unchallenged bases remain binding. Regardless of whether we were to agree with the defendant in his challenge to the trial court's ruling on Oulundsen's expert qualifications under § 7-2 of the Connecticut Code of Evidence, we cannot provide him with any practical relief. Therefore, the defendant's claim is moot, and this court lacks subject matter jurisdiction.

The appeal is dismissed.

In this opinion the other justices concurred.

[1] In his primary brief to this court, the defendant also raises a claim of error relating to the trial court's jury charge. Specifically, the defendant argues that the trial court should have instructed the jury that the defendant's *knowledge* of his previous felony conviction was an element of criminal possession of a firearm. Defense counsel expressly abandoned this claim at oral argument before this court. Specifically, when asked whether he was "still pressing" the jury instruction issue, defense counsel responded: "[W]e're not pressing that issue. . . . [T]here is a distinction between the federal [criminal possession] statute and the state statute [that] is significant. I recognize that now." Thereafter, defense counsel explicitly conceded that there was no error in this regard.

[2] The exact purpose of Oulundsen's testimony is unclear from the record, as the proffer did not reach Oulundsen's conclusions beyond the identification of three known addresses in the data: the scene of the crime, the defendant's residence, and another witness' residence. The defendant asserts in his brief, however, that this evidence was to "discredit [the] highly damaging testimony [from Wines]" that placed the defendant near the gas station at the time of the shooting.

[3] In addition to Oulundsen's report, the defendant also sought to admit the Scientific Working Group on Digital Evidence (SWGDE) Recommendations for Cell Site Analysis, which contained guidance on using data, such as NELOS points, for cell site analysis. The document, however, contained a disclaimer requiring that the SWGDE receive notification before the introduction of the document at any judicial or adjudicatory hearing. Oulundsen conceded that he did not notify the SWGDE prior to using the document during his testimony.

[4] *Edwards* and *Steele* held that expert testimony based on scientific evidence is inadmissible unless the party offering it establishes that the underlying methodology is reliable. See *State* v. *Edwards*, supra, 325 Conn. 124–25; *State* v. *Steele*, supra, 176 Conn. App. 33–35.

[5] The sixth amendment right to present a defense is made applicable to the states through the due process clause of the fourteenth amendment. See, e.g., *State* v. *Andrews*, 313 Conn. 266, 272 n.3, 96 A.3d 1199 (2014).

[6] The defendant does not challenge the exclusion of Thomas' testimony.