**14-975-cv**
*Trikona Advisers Limited v. Chugh, et al.*

# In the

# United States Court of Appeals

## For the Second Circuit

————

AUGUST TERM, 2016

ARGUED: AUGUST 22, 2016
DECIDED: JANUARY 18, 2017

No. 14-975-cv

TRIKONA ADVISERS LIMITED,
*Plaintiff-Appellant,*

*v.*

RAKSHITT CHUGH, *individually, and as Trustee of the RC Family Trust,*
PEAK XV CAPITAL ADVISERS LLC, PEAK XV CAPITAL LLC, PEAK XV
GP LLC, ARC CAPITAL LLC, PEAK XC FUNDAMENTAL VALUE LIMITED
PARTNERSHIP,
*Defendants-Appellees.*[*]

————

Appeal from the United States District Court
for the District of Connecticut.
No. 11 Civ. 2015 – Stefan R. Underhill, *Judge.*

————

Before: WALKER, CHIN, and LOHIER, *Circuit Judges.*

————

[*] The Clerk of the Court is directed to amend the caption as shown.

Plaintiff Trikona Advisers, Ltd. ("TAL") appeals from a decision of the district court for the District of Connecticut (Stefan R. Underhill, *J.*) granting summary judgment in favor of defendants Rakshitt Chugh, ARC Capital LLC, and other related corporate entities (the "Chugh Defendants"). TAL's complaint alleged breaches of fiduciary duty by Chugh, a former partner and fifty-percent owner of TAL, and the other defendants. The district court held that TAL's claims had previously been determined in Chugh's favor in a proceeding in the Cayman Islands, and that TAL was collaterally estopped from asserting them in the Connecticut action. On appeal, TAL argues that the district court incorrectly applied the doctrine of collateral estoppel and further argues that Chapter 15 of the United States Bankruptcy Code prevents the district court from giving preclusive effect to the Cayman court's factual findings. We find TAL's arguments meritless and therefore AFFIRM the judgment of the district court.

_____

ANDREW B. BOWMAN, Westport, CT, *for Plaintiff-Appellant*.

JOHN G. BALESTRIERE (Stefan Savic, *on the brief*), Balestriere Fariello LLP, New York, NY, *for Defendants-Appellants*.

_____

JOHN M. WALKER, JR., *Circuit Judge*:

Plaintiff Trikona Advisers, Ltd. ("TAL") appeals from a decision of the district court for the District of Connecticut (Stefan R. Underhill, *J.*) granting summary judgment in favor of defendants Rakshitt Chugh, ARC Capital LLC, and other related corporate entities (the "Chugh Defendants"). TAL's complaint alleged breaches of fiduciary duty by Chugh, a former partner and fifty-percent owner of TAL, and the other defendants. The district court held that TAL's claims had previously been determined in Chugh's favor in a proceeding in the Cayman Islands, and that TAL was collaterally estopped from asserting them in the Connecticut action. On appeal, TAL argues that the district court incorrectly applied the doctrine of collateral estoppel and further argues that Chapter 15 of the United States Bankruptcy Code prevents the district court from giving preclusive effect to the Cayman court's factual findings. We find TAL's arguments meritless and therefore AFFIRM the judgment of the district court.

## BACKGROUND

### I.     Factual Background

TAL is an investment advisory company. Its two beneficial owners, Chugh and Aashish Kalra, formed the company in 2006 as a vehicle for helping foreign investors invest in Indian real estate and

infrastructure. Each man held a fifty percent equity stake in TAL through entities controlled by them. Chugh's shares were owned by ARC Capital LLC ("ARC") and Haida Investments ("Haida"), and Kalra's shares were owned by Asia Pacific Investments, Ltd. ("Asia Pacific"). At the same time, the two men formed Trinity Capital Plc., a closed-end fund listed on the London Stock Exchange, through which they solicited investments. Kalra and Chugh managed Trinity through TAL. Trinity paid TAL a fee for its management services, calculated at two percent of Trinity's net asset value plus a performance fee.

The 2008 economic crisis took its toll on TAL and soured the relationship between Chugh and Kalra. Trinity's shareholders began pressuring the Trinity board to sell the company's assets and distribute capital which, while it might benefit the shareholders, would reduce TAL's management fees by lowering Trinity's net asset value. Chugh and Kalra differed on how to respond to the Trinity board's proposed asset sale: Kalra opposed the move, while Chugh wanted to be more conciliatory to the shareholders. TAL tried to prevent the sell-off by acquiring the shares of QVT, one of Trinity's main shareholders, but the deal collapsed when TAL could not secure the necessary financing. Frustrated, Kalra advocated taking legal action against QVT for breach of contract, but was

ultimately dissuaded from that course by Chugh and outside legal counsel.

At the same time that the QVT deal collapsed, TAL also engaged in a series of ill-fated transactions with a German fund manager called SachsenFonds Holdings GmbH. At Kalra's behest, SachsenFonds agreed to invest £45 million in three of Trinity's existing real estate investments, and to co-invest a further £45 million with Trinity in five additional real estate acquisitions. The latter agreement failed to gain the approval of Trinity's second-largest shareholder, which was still pressing Trinity to sell assets and did not want the company investing in new property acquisitions. To further this goal, Trinity ousted Chugh and another TAL-affiliated director from Trinity's board and replaced them with directors who favored the selloff. Trinity then began liquidating its assets, resulting in a decline in its net asset value and a corresponding reduction in TAL's fees. In early 2009, SachsenFonds itself became a victim of the global credit crunch and was unable to perform its remaining contractual obligations to Trinity. In an attempt to avoid liability for its default, SachsenFonds brought suit against Trinity and TAL, as well as Chugh and Kalra individually, alleging that they had fraudulently induced it to invest in Trinity.

The wide-ranging financial and legal fallout from TAL's unsuccessful deal with SachsenFonds further soured the relationship

between TAL and Trinity. In December of 2009, Trinity cited the failed transaction as a breach of TAL's management agreement and terminated its contractual relationship with TAL. TAL responded by commencing an arbitration with Trinity, which the parties settled.

With the collapse of the SachsenFonds deal, TAL essentially ceased to function as a going concern and made no serious attempts to enter into any new business or investment relationships. Kalra and Chugh blamed each other for the collapse of TAL's business, and by 2009 their relationship had deteriorated to the point that they could no longer work together. They each used portions of TAL's assets, along with customer information, to establish new, separate companies, Peak XV (Chugh) and Duranta (Kalra), so that each could attempt to build new real estate investment businesses. The souring of Kalra and Chugh's relationship culminated on January 11, 2012, when, with no notice to Chugh, TAL's board of directors voted to remove him as a director. This left Kalra exclusively in charge of TAL. Thereafter, Kalra proceeded to treat TAL and its assets as his own and Chugh was excluded from further involvement in the business.

## II.    Procedural History

TAL's collapse spawned a number of legal proceedings in the United States and abroad, two of which are relevant here: a wind-up

proceeding in the Cayman Islands and the federal civil suit in Connecticut that is the subject of this appeal.

**A. The Wind-Up Proceeding**

On February 13, 2012, ARC and Haida, which held Chugh's TAL shares and were controlled by Chugh, filed a petition in the Grand Court of the Cayman Islands, seeking to "wind up" TAL, a Cayman corporation. The suit sought to liquidate the business and divide its assets between Chugh and Kalra. Asia Pacific, which held Kalra's TAL shares and was controlled by Kalra, opposed Chugh's petition. Under Cayman Islands law, a court may order a company to be wound up if it is "of opinion that it is just and equitable" to do so. Cayman Islands Companies Law V.92 (2013 Revision). Chugh argued to the Cayman court that it would be just and equitable to liquidate the company because: (1) TAL had experienced a "loss of substratum," *i.e.* a loss of its ability to "carry on the business for which it was established," due to its dire financial condition and the complete breakdown in trust between Kalra and Chugh; (2) Kalra had wrongfully caused Chugh to be removed from TAL's board and thereby deprived Chugh of his "legitimate expectation of being involved in [TAL's] management"; and (3) after he had removed Chugh from the board, Kalra proceeded to misuse TAL's assets for his sole benefit.

Kalra opposed the wind-up by asserting the affirmative defense that Chugh had breached his fiduciary duty to TAL in several ways, and that his removal from the board was therefore justified. Specifically, Kalra argued that: (1) Chugh intentionally sabotaged TAL's attempt to acquire QVC's shares in Trinity and had "caused" TAL to pay QVT £2 million for covenants of "extremely limited value"; (2) Chugh had later "prevented" TAL from bringing suit against QVT for breach of contract, over Kalra's objections; (3) Chugh "forced" Kalra to agree to an unfavorable settlement with Trinity in the breach of contract arbitration arising out of the failed SachsenFonds deal; and (4) Chugh "stole" TAL's assets and customer information for use in establishing Peak XV and interfered in the distribution of payments due to Kalra. Kalra framed these arguments as jurisdictional defenses, arguing that if any one of these allegations were true, Chugh would be precluded from invoking the Cayman court's equitable jurisdiction under the doctrine of unclean hands.

The Cayman court tried the wind-up proceeding over seven days in January of 2013. At the trial's conclusion, the court granted Chugh's petition. It found that "each of" Chugh's allegations was supported by evidence, and that these allegations "taken together" supported a finding that it was just and equitable to wind up TAL. It also rejected each of Kalra's affirmative defenses, concluding that

there was "no merit whatsoever in the allegations made against Mr. Chugh." Kalra appealed this judgment, first to the Court of Appeal of the Cayman Islands, and then to the Judicial Committee of the Privy Council in London. Both tribunals affirmed the judgment.

**B. The District Court Proceeding**

On December 28, 2011, two months before the commencement of the wind-up proceeding in the Caymans, Kalra, through Asia Pacific, sued the Chugh Defendants in the district court in Connecticut. After TAL's board removed Chugh, TAL was substituted as plaintiff. TAL's Third Amended Complaint, the operative complaint in the district court proceeding, asserts eleven causes of action against the Chugh Defendants sounding in breach of fiduciary duty, aiding and abetting breach of fiduciary duty, unfair competition, theft of trade secrets, civil conspiracy, conversion, statutory theft, unjust enrichment, and abuse of process. TAL alleged that Chugh breached his fiduciary duty by: (1) undermining TAL's negotiating positions in the QVT and SachsenFonds deals; (2) causing TAL to enter into an unfavorable settlement of its claims against Trinity; (3) interfering with payments due to Kalra; and (4) misappropriating TAL's customer information and assets in the course of founding Peak XV to unfairly compete with TAL. These claims substantially reprised the allegations Kalra

asserted as affirmative defenses to Chugh's wind-up petition in the Caymans.

Following the ruling of the Cayman court in the wind-up proceeding in January of 2013, the Chugh Defendants moved for summary judgment in the district court based on collateral estoppel. They argued that in deciding the petition the Cayman court had already made findings of fact in Chugh's favor on all of Chugh's assertions regarding TAL's collapse, and that Kalra was therefore collaterally estopped from relitigating those factual disputes. The district court agreed, and on March 6, 2014 granted the Chugh Defendants' motion for summary judgment.

On April 3, 2014, TAL moved for reconsideration pursuant to Federal Rule of Civil Procedure 59(e). TAL argued that the district court improperly gave preclusive effect to the Cayman court's findings because each finding of fact on which the Cayman court had relied constituted an independent ground for granting Chugh's petition for winding up. As a result, no single finding of fact was "essential" to the Cayman court's holding in the wind-up proceeding as required by Connecticut law. *See Lyon v. Jones*, 291 Conn. 384, 406 (2009).

In its Rule 59(e) ruling, the district court agreed with TAL that the Cayman court's findings of fact regarding Chugh's arguments for winding up could not be preclusive, because each argument

constituted an independent ground for granting the petition, and thus none alone was essential to the judgment. The district court nevertheless denied the motion to reconsider. It held that while the arguments that Chugh made to the Cayman court *in favor* of winding up TAL could not support collateral estoppel, the arguments that Kalra had advanced *against* winding up TAL could perform that function. Because Kalra had framed his assertions against Chugh as a jurisdictional defense based on unclean hands, he had effectively argued that the Cayman court was required to dismiss Chugh's petition for lack of jurisdiction if that court accepted *any* of his claims as true. Because success on any single claim of fiduciary breach by Chugh would necessitate a finding of unclean hands and thus bar the petition, the Cayman court's findings on these claims were "essential" to the outcome of the petition. The district court concluded that because the factual assertions Kalra made in defending the petition were fundamentally the same as the factual assertions that TAL made in its Third Amended Complaint, collateral estoppel still applied under Connecticut law and summary judgment was thus appropriate.

TAL now timely appeals both the district court's grant of summary judgment and its denial of TAL's motion for reconsideration.

**DISCUSSION**

We review a district court's grant of summary judgment *de novo*. *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 465 (2d Cir. 2001). The district court's judgment may be affirmed "on any ground fairly supported by the record." *Id.* at 466. We also review a district court's application of the doctrine of collateral estoppel "*de novo,* accepting all factual findings of the district court unless clearly erroneous." *Chartier v. Marlin Mgmt., LLC*, 202 F.3d 89, 93 (2d Cir. 2000)**.** A district court's denial of a motion for reconsideration, however, is reviewed for abuse of discretion. *RJE Corp. v. Northville Indus. Corp.*, 329 F.3d 310, 316 (2d Cir. 2003) (per curiam).

TAL makes five separate arguments on appeal: 1) that the district court was precluded by Chapter 15 of the United States Bankruptcy Code from applying collateral estoppel to the findings of fact from the wind-up proceeding; 2) that the district court incorrectly gave preclusive effect to the Cayman court's findings of fact because those findings were not "essential" to its judgment; 3) that the Cayman court's findings of fact cannot have preclusive effect in the district court because the wind-up proceeding was an *in rem* proceeding, while the district court proceeding is *in personam*; 4) that TAL and the respondents in the wind-up proceeding are not in privity with each other; and 5) that the district court erred in granting comity to the judgment of the Cayman court because doing

so was contrary to United States national policy. We address each of these arguments in turn.

**I.      Chapter 15 of the United States Bankruptcy Code**

Chapter 15 of the United States Bankruptcy Code, 11 U.S.C. § 1501 *et seq.*, requires that under certain circumstances, before foreign liquidation proceedings may be recognized in United States courts, a bankruptcy court in the United States must approve an application for recognition from a "foreign representative" appointed in connection with that foreign proceeding. 11 U.S.C. § 1515. TAL argues that because no application for recognition was ever made in connection with the Cayman Island wind-up proceeding, that judgment cannot be recognized in the district court. As a result, TAL argues that the findings of fact made by the Cayman court in the wind-up proceeding cannot be given preclusive effect and therefore cannot support the district court's granting of summary judgment in favor of the defendants on collateral estoppel grounds.

We agree with the district court that the requirements of Chapter 15 do not apply here. Chapter 15, enacted by Congress in 2005, incorporated into United States law the Model Law on Cross-Border Insolvency drafted by the United Nations Commission on International Trade. 11 U.S.C. § 1501. The statute's primary purpose was to facilitate the consolidation of multinational bankruptcies into one single proceeding. *In re ABC Learning Centres Ltd.*, 728 F.3d 301,

305–06 (3d Cir. 2013). Chapter 15 addressed a persistent problem in cross-border liquidations: creditors would initiate multiple bankruptcy proceedings to recover assets from a debtor in jurisdictions other than the site of the principal liquidation. *Id*. at 305. This caused administrative inefficiency and also allowed creditors to bypass the priority restraints of the main bankruptcy proceeding and attempt to recover more than their fair share of the debtor's assets. *Id*. In the interests of uniformity and efficiency, Chapter 15 provides for the coordination of domestic and foreign proceedings into a single bankruptcy and, with specific relevance to the issue raised by TAL, allows foreign representatives appointed in connection with foreign proceedings to seek recognition of those proceedings in United States courts as a means of requesting United States assistance in administering the main liquidation. *Id*. at 306.

Consistent with its limited purpose, 11 U.S.C. § 1501(b) specifies four circumstances in which Chapter 15 applies. These are cases in which:

> (1) assistance is sought in the United States by a foreign court or a foreign representative in connection with a foreign proceeding;
> (2) assistance is sought in a foreign country in connection with a case under this title;
> (3) a foreign proceeding and a case under this title with respect to the same debtor are pending concurrently; or
> (4) creditors or other interested persons in a foreign country have an interest in requesting the

commencement of, or participating in, a case or proceeding under this title.

11 U.S.C. § 1501(b). These scenarios assume that (1) a United States court is being asked either to assist in the administration of a foreign liquidation proceeding or to administer a liquidation proceeding itself, or (2) a foreign court is being asked to assist in administering a liquidation proceeding in the United States.

Moreover, 11 U.S.C. § 1515 does not apply generally to parties, but, by its terms, requires only "foreign representatives" to apply for recognition of a foreign judgment in bankruptcy. A "foreign representative" is defined in 11 U.S.C. § 101(24) as "a person or body… authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding."[1]

No party to the district court proceeding is a "representative" of a "foreign proceeding," as those terms are defined in 11 U.S.C. §§ 101(24) and (23). And no party to the district court proceeding is seeking the assistance of the district court in enforcing or administering a foreign liquidation proceeding, 11 U.S.C. §

---

[1] The same section defines "foreign proceeding" as "a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation." 11 U.S.C. § 101(23).

1501(b)(1); nor is any party seeking the assistance of a foreign country, 11 U.S.C. § 1501(b)(2); nor does the case involve a proceeding under the Bankruptcy Code pending concurrently with a foreign liquidation proceeding, 11 U.S.C. § 1501(b)(3); nor are foreign creditors seeking to commence an action under the Bankruptcy Code, 11 U.S.C. § 1501(b)(4). The instant non-bankruptcy action, brought in the District of Connecticut and governed by Connecticut law, is unconnected to any foreign or United States bankruptcy proceeding. Even assuming, *arguendo*, that the wind-up proceeding is the type of case that Chapter 15 would ordinarily cover, Chapter 15 does not apply when a court in the United States simply gives preclusive effect to factual findings from an otherwise unrelated foreign liquidation proceeding, as was done here.[2]

---

[2] In a Rule 28(j) letter, TAL provided a copy of an order of the Superior Court of Connecticut, Judicial District of Hartford, dated May 31, 2016, holding that a complaint by ARC against Asia Pacific could only be enforced through Chapter 15. *See ARC Capital LLC v. Asia Pacific Ltd., et al.*, No. HHD-CV-15-5040236-S (Conn. Super. Ct. May 31, 2016). Even assuming, *arguendo*, that the Superior Court's order was correctly decided, the facts here are distinguishable. In the state court proceeding, ARC sought the assistance of the Superior Court of Connecticut in enforcing an order that the Cayman court issued in connection with the wind-up proceeding, which awarded attorneys' fees to ARC and Haida Investments, Ltd. Because ARC requested the direct assistance of a court within the United States in enforcing an order issued in connection with a foreign liquidation proceeding, this is a scenario that arguably falls within the scope of Chapter 15. Here, by contrast, the Chugh Defendants argue only that the findings of fact made in the wind-up proceeding should be given preclusive effect. They do not seek the assistance of the District of Connecticut in enforcing any judgment of the Cayman court.

**II.    Collateral Estoppel**

Next we turn to TAL's contention that the district court misapplied Connecticut's doctrine of collateral estoppel. The parties' briefs assume that Connecticut state law governs this case, "and such implied consent is … sufficient to establish the applicable choice of law." *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) (quotation marks and citations omitted). Collateral estoppel is a doctrine that "prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties upon a different claim." *Lighthouse Landings, Inc. v. Conn. Light & Power Co.*, 300 Conn. 325, 343 (2011). An issue decided against a party in a prior proceeding may not be relitigated if: (1) it was "fully and fairly litigated in the first action"; (2) it was "actually decided"; and (3) the decision was "necessary to the judgment." *Id.* at 344 (quoting *Lyon v. Jones*, 291 Conn. 384, 406 (2009)). An issue is "necessarily determined" if "in the absence of a determination of the issue, the judgment could not have been validly rendered." *Id.*  Connecticut adheres to the rule of collateral estoppel articulated in the Second Restatement of Judgments, Restatement (Second) of Judgments § 27 (1982), which, in addition to setting forth the above rule, also provides that "[i]f an issue has been determined, but the judgment is not dependent on the determination of the issue, the parties may relitigate the issue in

a subsequent action. Findings on nonessential issues usually have the characteristics of dicta." *Lyon*, 291 Conn. at 406 (quotation marks and citations omitted).

As the district court noted in its ruling on Asia Pacific's motion for reconsideration, TAL's affirmative defenses to Chugh's arguments to the Cayman court would have been dispositive of the wind-up proceeding. Had the Cayman court found to be credible any one of Kalra's several assertions that Chugh breached his fiduciary duty, it would have been required to dismiss the petition. Thus, the Cayman court was required to resolve each of Kalra's arguments in Chugh's favor before it could proceed to the merits of Chugh's petition.

TAL does not dispute that Kalra's affirmative defenses in the wind-up proceeding are based in substance on the same allegations made in its Third Amended Complaint. Because those defenses were necessarily resolved against TAL in the wind-up proceeding, and because they substantially correspond to the allegations contained in the operative complaint in this case, the district court properly applied the doctrine of collateral estoppel.

### III.    Preclusive Effect of *In Rem* Proceedings

TAL next contends that findings of fact made by the Cayman court cannot have preclusive effect in the district court proceeding because the wind-up proceeding was an *in rem* action, while the

district court proceeding is an *in personam* action. This argument is meritless.

The Restatement (Second) of Judgments specifies that *in rem* proceedings do have preclusive effect in subsequent *in personam* suits where parties to the subsequent suits were represented in the prior *in rem* proceeding.[3] We previously addressed this question in *Johnston v. Arbitrium (Cayman Islands) Handels AG*, 198 F.3d 342, 348 (2d Cir. 1999), where we held that factual findings in an *in rem* suit in Delaware Chancery Court had preclusive effect under Delaware law on a subsequent *in personam* suit in federal district court.

The cases TAL cites in its briefing do not support its position. TAL argues that the United States Supreme Court's decision in *Myers v. International Trust Co.*, 263 U.S. 64 (1923) holds that *in rem* proceedings cannot have a preclusive effect on subsequent *in personam* suits. But *Myers* actually stands for the opposite proposition. TAL quotes the following language from *Myers*: "An adjudication of bankruptcy, or a discharge therefrom, is a judgment in rem and is binding on, and res judicata as to, all the world, only in respect of the status of the bankrupt, and is not conclusive as to the

---

[3] *See* Restatement (Second) of Judgments § 30, cmt. d (1982)("A valid judgment based only on jurisdiction over a thing is conclusive as to interests in the thing, even as to nonappearing parties (see Comment *a*). Such a judgment has no further conclusive effect except in accordance with the rules of issue preclusion set forth in §§ 27, 28. Under those rules, parties who have appeared in the action and litigated an issue as adversaries will normally be precluded from relitigating that issue if its determination was essential to the judgment.").

findings of fact or subsidiary questions of law on which it is based

…," but omits the rest of the sentence: "*except as between parties to the*

*proceedings or privies thereto*." 263 U.S. at 73 (emphasis added).[4]

The only Connecticut case that TAL cites is *Wood v. Watkinson*,

17 Conn. 500 (1846), from which it extracts the following quotation:

> So, if a judgment operates in the state where it was
> rendered only *in rem*, it will not elsewhere be enforced
> *in personam*. It results conclusively from this principle,
> or is rather involved in it, that if a judgment in a state
> where it is recovered, has not the effect of binding
> personally the defendants . . . in the suit in which it was
> rendered, no greater effect will be given to it in any
> other state where it is endeavoured to be enforced.

*Id*. at 506. But *Wood* simply holds that if a judgment rendered in one

state is only binding *in rem*, then the Full Faith and Credit Clause,

U.S. Const., art. IV, sec. 1, does not require other state courts to

enforce that judgment *in personam*, since the Constitution does not

require a state to give "greater effect" to an out-of-state judgment

"than [that judgment] would have in the state where it was

rendered." *Wood*, 17 Conn. at 504-05. *Wood* does not hold that *in rem*

proceedings can never have preclusive effect in a subsequent *in*

---

[4] TAL argues that the exception in *Myers* only applies when the parties to the prior *in rem* suit were also parties to an "actual, distinct, and separate *in personam* suit" connected to the liquidation proceeding. **BB 43**. However, the opinion in *Myers* does not state such a limitation. *See* 263 U.S. at 73-74. In any event, it is the Connecticut law of collateral estoppel that governs this suit, and TAL has not cited any Connecticut case in support of this proposition.

*personam* suit, and indeed does not address the question of issue preclusion at all.

## IV.    Privity

TAL also argues that the factual findings of the Cayman court should not be given preclusive effect because the parties to the district court proceeding were not the same as, or in privity with, the parties in the wind-up proceeding. A party can be estopped from relitigating an issue that was decided adversely to him in a prior litigation only if the issue was litigated by that party, or by a party with substantially similar legal interests. *Mazziotti v. Allstate Ins. Co.*, 240 Conn. 799, 814 (1997). This requirement ensures "that the interests of the party against whom collateral estoppel . . . is being asserted have been adequately represented . . . at the initial proceeding." *Id.* at 813 (quoting *Aetna Cas. & Sur. Co. v. Jones*, 220 Conn. 285, 304 (1991)). Under Connecticut law, "[t]here is no prevailing definition of privity to be followed automatically in every case." *Id*. A court "focuses on the functional relationships of the parties." *Id*. at 814 (noting that privity is, "in essence, a shorthand statement for the principle that collateral estoppel should be applied only when there exists such an identification in interest of one person with another as to represent the same legal rights so as to justify preclusion.").

TAL's arguments are unpersuasive. First, TAL suggests that the Chugh Defendants are not "entitled to the benefit" of the wind-up proceeding because they are not in privity with the parties who filed the wind-up petition in the Cayman court. This argument is irrelevant. Connecticut has followed most other jurisdictions in abandoning the "mutuality of parties" rule, which held that both parties in a subsequent litigation needed to be the same as, or in privity with, the parties in a prior litigation in order for collateral estoppel to apply. Under current Connecticut law, only the party against whom collateral estoppel is asserted (in this case, TAL) must have been represented in both proceedings. *Aetna Cas. & Sur. Co.*, 220 Conn. at 302.

TAL does not make any specific argument to the effect that its interests were not adequately represented in the wind-up proceeding. Indeed, TAL has not disputed that it is in privity with Asia Pacific, which was a party to the wind-up proceeding. This concession alone defeats TAL's privity argument. *See id*. at 303 ("Collateral estoppel may be invoked against a party to a prior adverse proceeding *or against those in privity with that party*.") (emphasis added). Moreover, Asia Pacific's defenses asserted in the wind-up proceeding were based entirely on alleged violations of TAL's rights, and those same purported violations now form the basis of TAL's Third Amended Complaint. While the parties in the

wind-up proceeding and the district court proceeding are not identical, they are nearly so, and TAL has made no effort in this case to show that its interests were not identical to those of Asia Pacific. We therefore agree with the district court that TAL is sufficiently aligned with the respondents in the wind-up proceeding for collateral estoppel to apply.

**V. Comity**

Finally, we address TAL's argument that the district court erred in granting comity to the judgment of the Cayman court because doing so was contrary to United States "national policy." In a diversity action, state substantive law governs a court's application of comity principles. *See, e.g.*, *Drexel Burnham Lambert Grp. Inc. v. Galadari*, 777 F.2d 877, 880 (2d Cir. 1985). Connecticut adheres to "common-law comity principles," which "compel" a "rule of deference" to foreign judgments in most cases. *Turner v. Frowein*, 253 Conn. 312, 352 (2000). Judgments "of courts of foreign countries are recognized in the United States because of the comity due to the courts and judgments of one nation from another." *Id*. at 352 (quoting *Litvaitis v. Litvaitis*, 162 Conn. 540, 544 (1972)).

TAL is correct that a court is not required to grant comity to a foreign judgment where doing so would be contrary to the public policy of the state or nation called upon to give it effect. *See Litvaitis*, 162 Conn. at 544; *cf. Cunard S.S. Co., Ltd. v. Salen Reefer Servs. AB*, 773

F.2d 452, 457 (2d Cir. 1985). However, TAL's brief provides no argument, in law or policy, for its contention that comity would be inappropriate here. Other courts have granted comity to Cayman Island judgments. *See, e.g.*, *In re Nat'l Warranty Ins. Risk Retention Grp.*, 384 F.3d 959, 963 (8th Cir. 2004) (affirming bankruptcy court's recognition of comity with Cayman Islands court administering liquidation proceedings); *Cybernaut Capital Mgmt. Ltd. v. Partners Grp. Access Secondary 2008, L.P.*, No. 13 CIV. 5380 WHP, 2013 WL 4413754, at *3 (S.D.N.Y. Aug. 7, 2013) (affording comity to Cayman Islands judgment as not inconsistent with United States public policy). Given the strong presumption in favor of granting comity to foreign judgments, TAL's threadbare arguments on this point are unavailing.

Lastly, TAL unpersuasively argues that Chapter 15 of the Bankruptcy Code preempts the state law doctrine of comity. A federal statute may preempt state law either expressly or by implication. Express preemption occurs when "Congress . . . withdraw[s] specified powers from the States by enacting a statute containing an express preemption provision." *Wurtz v. Rawlings Co., LLC*, 761 F.3d 232, 238 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 1400 (2015) (quoting *Arizona v. United States*, 132 S. Ct. 2492, 2500-01 (2012)). TAL fails to cite any provision of Chapter 15 that expressly preempts the state law of comity. The one statute TAL does cite, 28

U.S.C. § 1334(c)(1), concerns the discretionary right of district courts to abstain from hearing core claims under Title 11 in the interest of comity with state courts and is inapposite here. *See, e.g., In re Petrie Retail, Inc.*, 304 F.3d 223, 232 (2d Cir. 2002).

A federal statute preempts state law by implication when Congress intends to "occupy the field" and when "the challenged state law stands as an obstacle to the accomplishment . . . of the full purposes and objectives of Congress." *Crosby v. NFTC*, 530 U.S. 363, 372-73 (2000) (quotation mark and internal citations omitted). TAL does not make any specific arguments regarding implied preemption, but such an argument would be unavailing in any case. Given the very narrow purpose of Chapter 15, it is clear that Congress did not intend to completely preempt state law regarding the application of the common law of comity. Such a result would do nothing to advance the stated objectives of the statute.

## CONCLUSION

We have considered TAL's remaining arguments, and we find them meritless. We therefore AFFIRM the judgment of the district court.