******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## ARC CAPITAL, LLC *v.* ASIA PACIFIC LIMITED ET AL.
### (AC 39319)

DiPentima, C. J., and Bright and Bishop, Js.

*Syllabus*

The plaintiff company brought this action seeking to enforce a judgment rendered in the Grand Court of the Cayman Islands awarding the plaintiff the attorney's fees and litigation expenses it had incurred in a prior action against the defendant A Co. and its principal, K, arising out of the winding up of a business venture. The trial court granted the defendants' motion to dismiss the present action for lack of subject matter jurisdiction, concluding that the foreign judgment that the plaintiff sought to enforce could only be enforced through chapter 15 of the United States Bankruptcy Code. From the judgment of dismissal rendered thereon, the plaintiff appealed to this court. *Held* that the trial court erred in concluding that chapter 15 of the United States Bankruptcy Code prevented it from deciding this action: the present action did not fall within any of the limited situations outlined in the federal statute (11 U.S.C. § 1501 [b]) requiring that a bankruptcy court in the United States approve an application for recognition from a foreign representative before foreign liquidation proceedings could be recognized in United States courts, as chapter 15 does not apply when a court in the United States simply gives preclusive effect to factual findings from an otherwise unrelated foreign liquidation proceeding, and here, the plaintiff alleged in its complaint that it is a corporation incorporated in the United States, not a foreign representative as defined by the Bankruptcy Code, and the present action was brought by the plaintiff as a private party to enforce a money judgment that was unconnected to any foreign or United States bankruptcy proceeding.

Argued November 29, 2017—officially released March 6, 2018

*Procedural History*

Action to, inter alia, enforce a foreign judgment, and for other relief, brought to the Superior Court in the judicial district of Fairfield, where the court, *Hon. Richard P. Gilardi*, judge trial referee, granted the plaintiff's application for a prejudgment remedy; thereafter, the matter was transferred to the Superior Court in the judicial district of Hartford, Complex Litigation Docket, where the court, *Miller, J.*, granted the defendants' motion to dissolve the prejudgment remedy; subsequently, the court, *Miller, J.*, granted the defendants' motion to dismiss and rendered judgment thereon, from which the plaintiff appealed to this court. *Reversed; further proceedings.*

*Jillian McNeil*, pro hac vice, with whom were *Stefan Savic* and, on the brief, *John G. Balestriere*, pro hac vice, for the appellant (plaintiff).

*Andrew B. Bowman*, for the appellees (defendants).

*Opinion*

DiPENTIMA, C. J. The plaintiff, ARC Capital, LLC, appeals from the judgment of the trial court dismissing, for lack of subject matter jurisdiction, this action against the defendants, Asia Pacific Limited (Asia Pacific) and Aashish Kalra, to enforce a judgment rendered in the Grand Court of the Cayman Islands (Cayman court). On appeal, the plaintiff claims that the court erred in concluding that the judgment the plaintiff sought to enforce could be enforced only through chapter 15 of the United States Bankruptcy Code; see 11 U.S.C. § 1501 et seq. (2012); and, therefore, improperly dismissed the action for lack of subject matter jurisdiction. We agree with the plaintiff and reverse the judgment of the trial court.

Knowledge of the following undisputed facts, as set forth by the United States Court of Appeals for the Second Circuit in the related case of *Trikona Advisors Ltd.* v. *Chugh*, 846 F.3d 22 (2017), is necessary for the resolution of this appeal. "[Trikona Advisors Ltd. (TAL)] is an investment advisory company. Its two beneficial owners, [Rakshitt] Chugh and Aashish Kalra, formed the company in 2006 as a vehicle for helping foreign investors invest in Indian real estate and infrastructure. Each man held a [50] percent equity stake in TAL through entities controlled by them. Chugh's shares were owned by ARC Capital LLC . . . and Haida Investments . . . and Kalra's shares were owned by Asia Pacific Investments, Ltd." Id., 26. By 2009, the relationship between Chugh and Kalra had deteriorated to the point where they could no longer work together. Id., 27. Eventually, TAL's board of directors voted to remove Chugh as a director, leaving Kalra to treat TAL and its assets as his own. Id.

"On February 13, 2012, ARC [Capital, LLC] and Haida [Investments], which held Chugh's TAL shares and were controlled by Chugh, filed a petition in the [Cayman court] seeking to 'wind up' TAL, a Cayman corporation. The [petition] sought to liquidate the business and divide its assets between Chugh and Kalra. Asia Pacific, which held Kalra's TAL shares and was controlled by Kalra, opposed Chugh's petition. . . . The Cayman court tried the wind-up proceeding over seven days in January of 2013. At the trial's conclusion, the court granted Chugh's petition. It found that each of Chugh's allegations was supported by evidence, and that these allegations taken together supported a finding that it was just and equitable to wind up TAL. It also rejected each of Kalra's affirmative defenses, concluding that there was no merit whatsoever in the allegations made against Mr. Chugh. Kalra appealed from this judgment, first to the Court of Appeal of the Cayman Islands, and then to the Judicial Committee of the Privy Council in London. Both tribunals affirmed the judgment." (Internal quotation marks omitted.) Id., 27–28.

The plaintiff brought the present action against Asia Pacific[1] and Kalra,[2] seeking to domesticate and enforce a subsequent costs order of the Cayman court. According to the complaint and accompanying exhibits, on February 7, 2013, the plaintiff and Haida applied to the Cayman court for attorneys' fees and litigation expenses incurred as petitioners in the winding up proceedings of TAL. On February 14, 2013, the Cayman court issued a costs order requiring that Asia Pacific reimburse the plaintiff and Haida for their litigation expenses. On May 15, 2013, the Cayman court issued a "default costs certificate" setting the final amount payable to the plaintiff and Haida at $760,067.65. In this action, the plaintiff sought to domesticate and enforce this order.

On August 24, 2015, the court, *Hon. Richard P. Gilardi*, judge trial referee, granted the plaintiff's application for a prejudgment remedy and ordered a disclosure of assets within two weeks of the date of the order. On August 27, 2015, the defendants filed an application to refer this case to the Complex Litigation Docket. The plaintiff consented to this referral and, on September 3, 2015, the court transferred the case to the Complex Litigation Docket.

On September 10, 2015, the defendants filed a motion to dissolve and/or modify the ex parte prejudgment remedy entered by Judge Gilardi and to dismiss the action in its entirety for lack of subject matter jurisdiction. On September 24, 2015, the court, *Miller, J.*, dissolved the prejudgment remedy. On May 31, 2016, the court, *Miller, J.*, granted the defendants' motion to dismiss the action in its entirety for lack of subject matter jurisdiction, concluding that "[t]he foreign 'judgment' which the plaintiff seeks to enforce can only be enforced through chapter 15 of the United States Bankruptcy Act. Moreover, the Cayman 'Winding-Up' proceeding could never qualify, under chapter 15, as a type of proceeding (main or nonmain) subject to judicial review." The plaintiff then filed the present appeal, in which it argues that the court erred in dismissing this action for lack of subject matter jurisdiction.

"We first set forth the applicable standard of review and general principles of law. The standard of review for a court's decision on a motion to dismiss [under Practice Book § 10-30] is well settled. A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . . When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations,

construing them in a manner most favorable to the pleader. . . . The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone. . . . In undertaking this review, we are mindful of the well established notion that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Footnote omitted; internal quotation marks omitted.) *Cuozzo* v. *Orange*, 315 Conn. 606, 614, 109 A.3d 903 (2015).

The plaintiff argues that the court erred in holding that chapter 15 of the United States Bankruptcy Code[3] prevented it from deciding this action for enforcement of a money judgment between private Connecticut parties. According to the plaintiff, a plain reading of chapter 15 shows that it does not apply to the present case. We agree.

"Chapter 15 of the United States Bankruptcy Code . . . requires that under certain circumstances, before foreign liquidation proceedings may be recognized in United States courts, a bankruptcy court in the United States must approve an application for recognition from a 'foreign representative' appointed in connection with that foreign proceeding. . . . Chapter 15, enacted by Congress in 2005, incorporated into United States law the Model Law on Cross-Border Insolvency drafted by the United Nations Commission on International Trade. . . . The statute's primary purpose was to facilitate the consolidation of multinational bankruptcies into one single proceeding. . . . Chapter 15 addressed a persistent problem in cross-border liquidations: creditors would initiate multiple bankruptcy proceedings to recover assets from a debtor in jurisdictions other than the site of the principal liquidation. . . . This caused administrative inefficiency and also allowed creditors to bypass the priority restraints of the main bankruptcy proceeding and attempt to recover more than their fair share of the debtor's assets. . . . In the interests of uniformity and efficiency, Chapter 15 provides for the coordination of domestic and foreign proceedings into a single bankruptcy and . . . allows foreign representatives appointed in connection with foreign proceedings to seek recognition of those proceedings in United States courts as a means of requesting United States assistance in administering the main liquidation." (Citations omitted.) *Trikona Advisors Ltd.* v. *Chugh*, supra, 846 F.3d 30.

In *Trikona Advisors Ltd.*, a related action involving some of the same parties, the Second Circuit addressed whether chapter 15 prevented the United States District Court for the District of Connecticut from giving preclusive effect to the Cayman court's factual findings. Id., 29–31. In that case, TAL brought an action against Chugh, ARC Capital and other related corporate entities, alleging breach of fiduciary duty by Chugh, a for-

mer partner and 50 percent owner of TAL, and the other defendants. Id., 26. The District Court granted summary judgment in favor of the defendants, concluding that TAL's claims previously had been determined in Chugh's favor in the proceeding in the Cayman court, and that TAL was collaterally estopped from asserting them in the District Court action. Id. On appeal, TAL argued, inter alia, that chapter 15 prevented the District Court from giving preclusive effect to the Cayman court's factual findings. Id.

In affirming the judgment of the District Court and concluding that chapter 15 did not apply, the Second Circuit stated: "Consistent with its limited purpose, 11 U.S.C. § 1501 (b) specifies four circumstances in which Chapter 15 applies. These are cases in which: (1) assistance is sought in the United States by a foreign court or a foreign representative in connection with a foreign proceeding; (2) assistance is sought in a foreign country in connection with a case under this title; (3) a foreign proceeding and a case under this title with respect to the same debtor are pending concurrently; or (4) creditors or other interested persons in a foreign country have an interest in requesting the commencement of, or participation in, a case proceeding under this title." (Internal quotation marks omitted.) *Trikona Advisors Ltd.* v. *Chugh*, supra, 846 F.3d 30–31. The court noted that "[t]hese scenarios assume that (1) a United States court is being asked either to assist in the administration of a foreign liquidation proceeding or to administer a liquidation proceeding itself, or (2) a foreign court is being asked to assist in administering a liquidation proceeding in the United States.

"Moreover, 11 U.S.C. § 1515 does not apply generally to parties, but, by its terms, requires only 'foreign representatives' to apply for recognition of a foreign judgment in bankruptcy. A 'foreign representative' is defined in 11 U.S.C. § 101 (24) [2012] as 'a person or body . . . authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.'[4]

"No party to the district court proceeding is a 'representative' of a 'foreign proceeding,' as those terms are defined in 11 U.S.C. § 101 (24) and (23) [2012]. And no party to the district court proceeding is seeking the assistance of the district court in enforcing or administering a foreign liquidation proceeding, 11 U.S.C. § 1501 (b) (1) [2012]; nor is any party seeking the assistance of a foreign country, 11 U.S.C. § 1501 (b) (2) [2012]; nor does the case involve a proceeding under the Bankruptcy Code pending concurrently with a foreign liquidation proceeding, 11 U.S.C. § 1501 (b) (3) [2012]; nor are foreign creditors seeking to commence an action under the Bankruptcy Code, 11 U.S.C. § 1501 (b) (4) [2012]. The instant nonbankruptcy action, brought in

the District of Connecticut and governed by Connecticut law, is unconnected to any foreign or United States bankruptcy proceeding. Even assuming, arguendo, that the wind-up proceeding is the type of case that Chapter 15 would ordinarily cover, Chapter 15 does not apply when a court in the United States simply gives preclusive effect to factual findings from an otherwise unrelated foreign liquidation proceeding, as was done here." (Footnote in original.) *Trikona Advisors Ltd.* v. *Chugh*, supra, 846 F.3d 31.

As in *Trikona Advisors Ltd.*, the present action does not fall within any of the limited situations outlined in 11 U.S.C. § 1501 (b) in which chapter 15 would apply. In its complaint, the plaintiff alleges that it is a corporation incorporated in the United States, not a foreign representative as defined by the Bankruptcy Code. This is an action by the plaintiff, a private party, to enforce a money judgment that is unconnected to any foreign or United States bankruptcy proceeding.[5] The court erred, therefore, in dismissing this action for lack of subject matter jurisdiction on the ground that the judgment only could be enforced through chapter 15 of the Bankruptcy Code.[6]

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other judges concurred.

[1] We note that the plaintiff named and served "Asia Pacific Limited" as a defendant. The court in *Trikona Advisors Ltd.* v. *Chugh*, supra, 846 F.3d 26, however, indicated that Kalra's shares were owned by "Asia Pacific Investments, Ltd." Further, on the default costs certificate at issue in this case, the name "Asia Pacific Limited" was changed to "Asia Pacific Ventures Limited." As these discrepancies were not raised by either party, we will assume that the proper defendant is "Asia Pacific Limited."

[2] The plaintiff's complaint alleged that because Kalra had complete control over Asia Pacific, it was seeking to pierce Asia Pacific's corporate veil and enforce the costs order against Kalra. The defendants argue that the Uniform Foreign Money-Judgments Recognition Act, General Statutes § 50a-34 (a) (2) et seq., prohibits recognition and enforcement of the Cayman costs order against Kalra because Kalra was not a party to the wind up proceedings. The trial court, however, did not address this issue in its decision. Accordingly, we decline to consider this claim. See *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 52, 717 A.2d 77 (1998) ("we will not address issues not decided by the trial court").

[3] Title 11 of the United States Code § 1501, entitled "Purpose and scope of application," provides:

"(a) The purpose of this chapter is to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of—

"(1) cooperation between—

"(A) courts of the United States, United States trustees, trustees, examiners, debtors, and debtors in possession; and

"(B) the courts and other competent authorities of foreign countries involved in cross-border insolvency cases;

"(2) greater legal certainty for trade and investment;

"(3) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor;

"(4) protection and maximization of the value of the debtor's assets; and

"(5) facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

"(b) This chapter applies where—

"(1) assistance is sought in the United States by a foreign court or a

foreign representative in connection with a foreign proceeding;

"(2) assistance is sought in a foreign country in connection with a case under this title;

"(3) a foreign proceeding and a case under this title with respect to the same debtor are pending concurrently; or

"(4) creditors or other interested persons in a foreign country have an interest in requesting the commencement of, or participating in, a case proceeding under this title.

"(c) This chapter does not apply to—

"(1) a proceeding concerning an entity, other than a foreign insurance company, identified by exclusion in section 109 (b);

"(2) an individual, or to an individual and such individual's spouse, who have debts within the limits specified in section 109 (e) and who are citizens of the United States or aliens lawfully admitted for permanent residence in the United States; or

"(3) an entity subject to a proceeding under the Securities Investor Protection Act of 1970, a stockbroker subject to subchapter III of chapter 7 of this title, or a commodity broker subject to subchapter IV of chapter 7 of this title.

"(d) The court may not grant relief under this chapter with respect to any deposit, escrow, trust fund, or other security required or permitted under any applicable State insurance law or regulation for the benefit of the claim holders in the United States."

[4] "The same section defines 'foreign proceeding' as 'a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.' 11 U.S.C. § 101 (23) [2012]." *Trikona Advisors Ltd.* v. *Chugh*, supra, 846 F.3d 31 n.1.

[5] The defendants rely, however, on a footnote in *Trikona Advisors Ltd.*v. *Chugh*, supra, 846 F.3d 22, in which the Second Circuit made a specific reference to, and assumed, for the purposes of its analysis, the validity of, the trial court's order at issue in the present case. Specifically, footnote 2 of that opinion states: "In a Rule 28 (j) letter, TAL provided a copy of an order from the Superior Court of Connecticut, Judicial District of Hartford, dated May 31, 2016, holding that a complaint by ARC against Asia Pacific could only be enforced through Chapter 15. . . . Even assuming, arguendo, that the Superior Court's order was correctly decided, the facts here are distinguishable. In the state court proceeding, ARC sought the assistance of the Superior Court of Connecticut in enforcing an order that the Cayman court issued in connection with the wind-up proceeding, which awarded attorneys' fees to ARC and Haida Investments, Ltd. Because ARC requested the direct assistance of a court within the United Sates in enforcing an order issued in connection with a foreign liquidation proceeding, this is a scenario that arguably falls within the scope of Chapter 15. Here, by contrast, the Chugh Defendants argue only that the findings of fact made in the wind-up proceeding should be given preclusive effect. They do not seek the assistance of the District of Connecticut in enforcing any judgment of the Cayman court." Id., 31 n.2.

According to the defendants, it is implicit in this footnote that ARC Capital had the opportunity to seek certification from the Cayman court as a foreign representative to enforce the costs order in the United States under chapter 15. That footnote, however, simply assumes, without deciding, the validity of the order in the present case. It expresses no opinion as to its actual validity. Moreover, with the exception of that footnote, the opinion itself in *Trikona Advisors Ltd.*v. *Chugh*, supra, 846 F.3d 31, specifically held that chapter 15 did not apply and that it "does not apply generally to parties, but, by its terms, requires only 'foreign representatives' to apply for recognition of a foreign judgment in bankruptcy." (Internal quotation marks omitted.) Id., 31.

[6] In light of this conclusion, we need not address the court's statement that "the Cayman 'Winding-Up' proceeding could never qualify, under chapter 15, as a type of proceeding (main or nonmain) subject to judicial review." We likewise need not address the plaintiff's additional argument that this court should afford comity to the money judgment in this case.

––––––––––––––––––––