22-1059-cv
*Elysium Health, Inc. v. ChromaDex, Inc.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of October, two thousand twenty-three.

Present:

> PIERRE N. LEVAL,
> BARRINGTON D. PARKER,
> WILLIAM J. NARDINI,
> *Circuit Judges.*

---

ELYSIUM HEALTH, INC.,

> *Plaintiff-Counter Claimant-Appellant-Cross-Appellee*,

> v.

CHROMADEX, INC.,

> *Defendant-Counter Defendant-Appellee-Cross-Appellant*.

22-1059-cv (Lead)
22-1153-cv (XAP)

---

| | |
|---|---|
| For Appellant-Cross-Appellee: | CRAIG B. WHITNEY (Tiffany R. Caterina, Los Angeles, CA, *on the brief*), Frankfurt Kurnit Klein & Selz PC, New York, NY |
| For Appellee-Cross-Appellant: | JOEDAT H. TUFFAHA (Kate Elizabeth Cassidy, *on the brief*), LTL Attorneys LLP, Los Angeles, CA |

1

Appeal from a judgment of the United States District Court for the Southern District of New York (Lewis J. Liman, *District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Appellant-Cross-Appellee Elysium Health, Inc. ("Elysium") appeals from a judgment of the United States District Court for the Southern District of New York (Lewis J. Liman, *District Judge*), entered on April 28, 2022, enforcing a settlement agreement between Elysium and Appellee-Cross-Appellant ChromaDex, Inc. ("ChromaDex"). The disputed settlement arose from settlement discussions between Elysium's and ChromaDex's in-house legal counsels, Thomas Wilhelm and William Carter, respectively. In a call on February 2, 2022 (the "February 2 Call"), the parties discussed a possible settlement agreement, and Carter said that if Elysium agreed to the terms proposed by Carter, the parties would have a deal. In an email on February 3, 2022 (the "February 3 Email"), Wilhelm wrote, "we can accept the additional terms you proposed yesterday," listed the terms of the agreement, and then stated, "I understand that now that we have an agreement you will begin work on documentation." App'x at 1301. The agreement discussed on the call and written out in the email would resolve the outstanding litigation between them before the district court as well as another dispute before a federal court in California, which resolution would include a $2.5 million payment in two installments from Elysium to ChromaDex. Just a couple hours after Elysium's February 3 Email, agreeing to the terms proposed by ChromaDex, the district court, unaware of the settlement, issued its decision on the parties' summary judgment and *Daubert* motions. The district court's decision was favorable to Elysium, dismissing ChromaDex's complaint in full and allowing Elysium's counterclaims to survive in part. After seeing the district court's summary judgment decision, Elysium told ChromaDex that

2

in fact no settlement had been reached yet. ChromaDex moved for the district court to enforce the settlement agreement, which the district court granted. This appeal followed. We assume the parties' familiarity with the case.

In an appeal from a district court's order enforcing a settlement agreement, "[w]e review the district court's findings of law under a de novo standard, and its factual conclusions under a clearly erroneous standard of review." *Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 322 (2d Cir. 1997).[1] "A finding of fact is clearly erroneous only if the appellate court is left with the definite and firm conviction that a mistake has been committed." *United States v. Rizzo*, 349 F.3d 94, 98 (2d Cir. 2003). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985).

## I.   Mutual Assent

Elysium first argues that the district court clearly erred in finding that there was mutual assent to form a binding settlement agreement. "It is a basic tenet of contract law that, in order to be binding, a contract requires a meeting of the minds and a manifestation of mutual assent. . . . As a general matter, courts look to the basic elements of the offer and acceptance to determine if there was an objective meeting of the minds sufficient to create a binding and enforceable contract." *Fisher v. Aetna Life Ins. Co.*, 32 F.4th 124, 136 (2d Cir. 2022).[2] Elysium takes issue with the

---

[1] Unless otherwise indicated, case quotations omit all internal quotation marks, footnotes, and citations and adopt all alterations.

[2] We apply New York state law to this case because the parties' briefs both assume New York state law governs and such, "implied consent is . . . sufficient to establish the applicable choice of law." *Trikona Advisers Ltd. v. Chugh*, 846 F.3d 22, 31 (2d Cir. 2017) (quoting *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009)).

district court's factual finding that it was "without contradiction" that Carter told Wilhelm on the February 2 Call that "if Elysium agreed to the terms he laid out then the parties would have a deal." *In re Elysium Health-ChromaDex Litig.*, No. 17-cv-7394, 2022 WL 1156181, at *5 (S.D.N.Y. Apr. 19, 2022). According to Elysium, Wilhelm's declaration regarding what occurred on the February 2 Call does, in fact, contradict Carter's declaration because it states that he and Carter "did not discuss all of the terms from the parties' prior communications" on the call, but rather only "additional settlement terms" regarding the $2.5 million payment from Elysium to ChromaDex. App'x at 1305. Carter's declaration states that all of the terms of the settlement were "conveyed" on the call. *Id.* at 1292.

The district court did not clearly err in finding that there was no dispute that ChromaDex had conveyed all of the material terms of the settlement offer. It is possible for Carter to have "conveyed" the material terms on the February 2 Call, *id.*, while having only "discuss[ed]" the additional guarantees regarding the $2.5 million payment*, id.* at 1305. In other words, if Carter and Wilhelm already understood what were the other terms of the settlement proposal, then Carter could convey the full offer by discussing the additional terms and only alluding to the other material terms or not even mentioning them on February 2, if it had already been clearly established that they constituted the settlement proposal. In any event, Wilhelm's email of February 3, in which he laid out and expressed agreement to all of the terms, clearly communicated his understanding that those were the terms of the existing proposal. If this were not so, Wilhelm could not have said that "we have an agreement."

Based on the district court's factual findings, which were not clearly erroneous, we agree with the district court's legal conclusion that there was a manifestation of mutual assent to form a contract. *See Shann v. Dunk*, 84 F.3d 73, 77 (2d Cir. 1996) ("The central issue—whether, based

on the factual findings, a binding contract existed—is a question of law that we review *de novo*.").

ChromaDex laid out all of the material terms of the offer on the February 2 Call, which Elysium then accepted in the February 3 Email. In the February 3 email, Elysium restated the terms of the offer and then said unequivocally: "now . . . we have an agreement." App'x at 1301; *see Krumme v. WestPoint Stevens Inc.*, 143 F.3d 71, 83 (2d Cir. 1998) (stating that "an acceptance must comply with the terms of the offer and be clear, unambiguous and unequivocal"). Therefore, there was a meeting of the minds and mutual assent to form a binding settlement agreement.

## II. Written Agreement

Next, Elysium argues that even if there was mutual assent, the district court erred in determining that the parties intended to be bound in the absence of a written agreement. "Under New York law, if parties do not intend to be bound by an agreement until it is in writing and signed, then there is no contract until that event occurs. This rule holds even if the parties have orally agreed upon all the terms of the proposed contract." *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 74 (2d Cir. 1984); *see also Ciaramella*, 131 F.3d at 322 (explaining that New York law and federal common law have no material differences on this question). In *Winston v. Mediafare Entertainment Corp.*, this Court "articulated several factors that help determine whether the parties intended to be bound in the absence of a document executed by both sides." 777 F.2d 78, 80 (2d Cir. 1985). "The court is to consider (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." *Id.* "No single factor is decisive, but each provides significant guidance." *Ciaramella*, 131 F.3d at

323. Elysium challenges several of the district court's factual findings and legal conclusions related to its analysis of the first, third, and fourth *Winston* factors.

Beginning with the first factor—which is "frequently the most important"—the district court found that the parties did not expressly reserve not to be bound in the absence of a writing. *Brown v. Cara*, 420 F.3d 148, 154 (2d Cir. 2005). We find that the district court's factual finding for the first prong was not clearly erroneous. As the district court explained, "[n]either the contents of the February 2 Call nor those of the February 3 Email are conditional in any respect." *In re Elysium Health*, 2022 WL 1156181, at *6. Furthermore, the district court accurately noted that assertions by the parties that they would not be bound until a formal writing was executed were related to a set of previous, unsuccessful settlement discussions that occurred months previously for a possible global settlement when the parties were in a different litigation posture and were therefore irrelevant to the agreement at issue. *Id.* Lastly, we agree with the district court that Wilhelm's statement in the February 3 Email telling Carter to "get started on the documentation," App'x at 1301, does not suggest an intent not to be bound without the documentation, but rather "that the settlement's reduction to writing was only a formality," *Powell v. Omnicom*, 497 F.3d 124, 130 (2d Cir. 2007). As neither party expressed an intent not to be bound absent a writing through either its words or behavior, the district court did not clearly err in finding that the first *Winston* factor weighed in favor of an enforceable settlement agreement.

Turning to the third factor, Elysium argues that the district improperly assessed only whether the parties had agreed to all of the material terms, not "whether there was literally nothing left to negotiate." *Winston*, 777 F.2d at 82. We need not resolve the question of whether *Ciaramella* changed the standard for the third *Winston* factor from there being "literally nothing left to negotiate" to the parties having to agree to only the "material terms," because even under

6

the more exacting *Winston* standard, the district court did not clearly err in finding that the third factor weighed in favor of an enforceable settlement agreement. *Compare Winston*, 777 F.2d at 82, *with Ciaramella*, 131 F.3d at 325. The district court found that "[n]one of the terms now mentioned by [Elysium]"—such as "confidentiality provisions, enforcement provisions, choice of venue provisions, choice of law provisions, and what the interest rate would be"—"would have required further discussion between the parties." *In re Elysium Health*, 2022 WL 1156181, at *7. In other words, the district court stated that there was nothing left for the parties to negotiate, which is why, according to the district court, "Elysium mentioned none of [the other terms] either in its February 3 email or in the emails the following week reneging on the deal." *Id.* Because the "district court's account of the evidence is plausible in light of the record viewed in its entirety," the district court did not clearly err in its analysis of the third *Winston* factor. *Anderson*, 470 U.S. 573–74.

Regarding the fourth *Winston* factor—whether the agreement at issue is the type of contract that is usually committed to writing—the district court found that the contract had, in fact, been committed to writing in Wilhelm's email. *In re Elysium Health*, 2022 WL 1156181, at *8. Elysium does not contest this finding by the district court, and we therefore do not need to reach the issue of whether, had it been only an oral agreement, the agreement is the type of contract that is usually put into writing. The district court did not clearly err in finding that the settlement agreement had been reduced to writing and therefore the fourth *Winston* factor weighed in favor of an enforceable settlement agreement.

In sum, we discern no error in the district court's analysis finding that all relevant *Winston* factors weighed in favor of an enforceable settlement agreement.

### III. Power to Enforce the Settlement

Lastly, Elysium argues that the district court did not have authority to enforce the settlement agreement summarily, on motion, at least to the extent the settlement resolves a case pending before another district court, that is, in California federal court. It is well settled, and the parties do not dispute, that "[a] district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it." *Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974). We discern no limiting rule that such an inherent authority is limited to settlement agreements that resolve only a single case. Moreover, to the extent Elysium argues that a district court can enforce a multi-jurisdictional settlement only after providing an evidentiary hearing, Elysium cites no authority that requires the district court to hold such a hearing. Nor did Elysium request such a hearing below. Even in contexts where a party does have a right to an evidentiary hearing, an evidentiary hearing is not required in cases like this one, where "the relevant facts . . . are not in dispute." *See Charette v. Town of Oyster Bay*, 159 F.3d 749, 755 (2d Cir. 1998) (preliminary injunction). We cannot say the district court abused its discretion—let alone committed plain error—by not offering an unrequested hearing when the evidence showed that the parties had unambiguously manifested agreement to the settlement.

*   *   *

We have considered all of Elysium's remaining arguments and find them unpersuasive. In addition, ChromaDex's conditional cross-appeal is dismissed as moot.[3] For the reasons stated above, we **AFFIRM** the judgment of the district court.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk

---

[3] We also note that Elysium voluntarily withdrew its appeal to the extent it challenged the district court's grant of summary judgment to ChromaDex on Elysium's claim regarding a citizen petition that ChromaDex had submitted to the U.S. Food and Drug Administration, and we therefore do not consider that aspect of the appeal here. *See* Dkt. No. 22-1059, ECF Nos. 158, 161.